GRAHAM HOSPITAL ASSOCIATION, Plaintiff-Appellant, *v.* CLAIRE B. TALLEY *et al.*, Trustees, Defendants-Appellees.

(No. 74-118;

Third District—June 12, 1975.

Claudon, Elson & Lloyd, Ltd., of Canton (James J. Elson, of counsel), for appellant.

Froehling & Taylor and Sebo, Bath & Wilson, both of Canton (Ralph Froehling, of counsel), for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

This action was brought by the plaintiff hospital association against the trustees of a charitable trust requesting that the assets of the trust be delivered to plaintiff under the doctrine of cy pres. The trial court held that, although the construction of a charitable hospital as directed by the settlor was inexpedient and impractical, nevertheless the doctrine of cy pres cannot be invoked prior to the expiration of the term of 15 years provided in the trust. Plaintiff appeals.

This litigation involves an irrevocable *inter vivos* charitable trust created on August 22, 1958, by Grant Keime. Under the provisions of the trust agreement, Keime and his daughter, Jessie McCance, were to receive the income from the trust during their lifetimes, with certain limitations as to the amounts.

The pertinent language of the trust agreement is as follows:

"The property herein conveyed or to be conveyed, devised or bequeathed or the income therefrom shall be held In Trust for charitable purposes. The prime charitable purpose shall be to build, organize, construct and equip a hospital for needy, worthy, and sick persons, regardless of race, color or creed. This hospital shall bear the name of 'The Grant Keime Family Memorial Hospital', which is to be managed so that it may be regarded as a Charity Hospital. It is to be erected on land that I may now or have owned in the area of my residence as my said Trustees may direct.

This hospital shall be erected by my Trustees not later than 15 years from the date of my death or the death of my daughter. Such hospital purpose may include, in the Trustee's discretion, facilities for convalescent or nursing purposes, either for the aged, infirm or those suffering from accident or any disability or crippling illness; for out-patient treatment; and for any form of physical therapy treatment.

My said Trustees shall have full power to make provisions and rules for the administration of said hospital and for the admission of patients thereto. They shall not indulge in any form of discrimination because of race, color, or creed. They may make proper and reasonable charges for hospital service for those who

can afford to pay. As for those persons in need of hospital care who cannot afford to pay, or fully pay elsewhere, my Trustees shall have full discretion to remit all or part of the charges made therefor to the end that said hospital may be conducted and maintained as a not-for-profit charitable institution.

Within the time stated in the sole discretion of my Trustees, I direct that my Trustees construct and equip a hospital building of suitable size, having in mind the assets available and the needs reasonably contemplated to be served, in the area of my home Township in Fulton County, Illinois * * *."

Grant Keime, a resident in a rural area between Cuba and Smithfield in Fulton County, died August 9, 1961, and his daughter died on December 17, 1963.

In 1960 Keime brought suit to set aside the trust and a decree was entered dismissing the complaint and confirming the charitable nature of the trust. The court stated in its memorandum opinion that "[t]he trust agreement shows a general charitable intent, clearly stated, *i.e.*, the construction, operation and maintenance of a hospital for sick and needy persons * * * the general charitable purpose of the trust is the care of the needy sick." The decree also provided a settlement for Keime's daughter, Jessie; the settlor and his successors in interest were permanently barred and enjoined from challenging or questioning the administration of the trust; and the trust was placed under the supervision of the circuit court.

In 1966 plaintiff hospital filed this suit, alleging that the trust could not be carried out, it being impossible and impractical to construct facilities as intended by Keime, and asking that the doctrine of cy pres be applied to prevent the failure of the trust and that the trust corpus be delivered to plaintiff for construction of a 96-bed extended-care unit in order to carry out the settlor's general charitable intent. Real estate belonging to the trust was valued at more than $1,000,000.

The defendants deny that the court need intervene under the doctrine of cy pres and contend that the trustees were specifically allowed a period of 15 years after 1963 in which to build a hospital under the provisions of the trust. At the same time, the defendant trustees filed a verified petition in the 1960 case requesting that the cy pres power of the court not be exercised and asking leave to sell farm land worth in excess of $100,000 with the proceeds to be transferred to Spoon River Health Services, Inc., and seeking approval of the court to finance a clinic to be built and administered by Spoon River Health Services near Cuba, Illinois. This petition was also filed as an affirmative defense in the Graham Hospital suit. Both cases were consolidated, and the At-

torney General of the State of Illinois has been a party defendant in both suits. The trial court denied the defendant's petition and request for affirmative relief, refusing to approve the proposed clinic, and no cross-appeal was taken from that order by the trustees.

The principle question before this court is whether the doctrine of cy pres should be applied to this charitable trust where the settlor directed that a hospital be constructed, staffed and equipped not later than 15 years after his death or the death of his daughter in order to serve needy, worthy and sick persons in his area, when prior to the expiration of the specified period, construction of a hospital is found by the trial court to be impractical, inexpedient and infeasible.

■■ Courts favor gifts to charity and will indulge in every presumption, consistent with the words used, to sustain them. (*First National Bank v. Elliott*, 406 Ill. 44, 92 N.E.2d 66 (1950); *Morgan v. National Trust Bank*, 331 Ill. 182, 162 N.E. 888 (1928); *Bruce v. Maxwell*, 311 Ill. 479, 143 N.E. 82 (1924).) Equity considers the general charitable purpose of the settlor as the substance of the gift, the mode pointed out for effectuating the purpose being merely an incident of the gift. *Community Unit School District No. 4 v. Booth*, 1 Ill.2d 545, 116 N.E.2d 161 (1953).

Where literal execution of the charitable gift is impossible, impractical or inexpedient, and a general charitable purpose to devote the property to such purposes is apparent, the trust will not be permitted to fail but will be executed by the court cy pres. *First National Bank v. Elliott; Board of Education v. City of Rockford*, 372 Ill. 442, 24 N.E.2d 366 (1939); *Mason v. Bloomington Library Ass'n*, 237 Ill. 442, 86 N.E. 1044 (1908).

The Restatement defines cy pres as follows:
> "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail, but the Court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor."
> Restatement (Second) of Trusts § 399 (1959).

This definition was approved in *First National Bank v. Elliott*, where the court also noted that cy pres is an extraordinary power not to be used on every occasion where administration of the trust becomes difficult.

The trial court held that "the construction and equipping of a hospital in the Cuba-Smithfield area, by the trust, *at this time* is impossible; and, if not impossible, then impractical, inexpedient, and infeasible." (Emphass added.) After careful review of the record, we find that the

evidence clearly supports this finding. It is also obvious that the time for execution of the trust will not expire until December 17, 1978.

The trustees were given sole discretion to determine the size of the hospital and the extent of service to be offered, "having in mind the assets available and the needs reasonably contemplated to be served, in the area of my home township * * *." The trust instrument also contains numerous other provisions for exercise of discretion by the trustees. The trustees are given "full power" to make rules of administration and admission of patients; "full discretion" as to charges to be made and remitted; "full authority and discretion" to lease space to physicians, surgeons and dentists; "sole discretion" as to the time of construction; and "full power and authority" to convey property. In addition, the trustees were given other powers to be used "in their discretion," such as to invest funds; sell, lease or mortgage trust property; and to borrow money. Most importantly, the trust provides that, "Such hospital purpose may include, in the trustee's discretion, facilities for convalescent or nursing purposes * * *; for out-patient treatment; and for any form of physical therapy treatment." The instrument also states that the settlor selected his trustees because "I have trust and confidence by reason of my past dealings" with them. In our judgment, these provisions demonstrate that the trustees were given broad discretionary powers, including the power to determine what facility to build.

■■■ A court of equity may not interfere with the exercise of discretionary powers of a trustee absent proof of fraud, bad faith or abuse of discretion. (*Continental Illinois National Bank v. Sever,* 393 Ill. 81, 65 N.E.2d 385 (1946).) The mere fact that if the discretion had been conferred upon the court, the court would have acted differently is not sufficient reason for interfering with the exercise of the power of the trustee. (See *Restatement (Second) of Trusts* §§ 382, 187(e), Comments (1959).) Accordingly, we conclude that the trial court here correctly found that the trust has not failed and that failure is not imminent. Considering the broad discretion granted the trustees to choose when and how to carry out the trust, the doctrine of cy pres is inapplicable at this time, and the determination of proper use of the trust property remains with the trustees, not the court.

In the time remaining for the trustees to carry out the terms of the trust, a plan may be formulated that will be a feasible and practical means of effecting the settlor's intent, and we take particular note of the possibility that changing economic conditions could favorably affect the feasibility of constructing an appropriate facility in the designated area.

In the event the trustees fail to carry out the purposes of the trust by December 17, 1978, when the 15-year period expires, proceedings

to administer or enforce the trust will then be appropriate, and the Attorney General of the State of Illinois would be a proper party to represent the public interest in the enforcement of the charitable trust, under section 12 of the Charitable Trust Act (Ill. Rev. Stat. 1973, ch. 14, § 62).

The decree will be affirmed.

Decree affirmed.

STOUDER, P. J., and ALLOY, J., concur.