**McDOWELL NATIONAL BANK OF SHARON, PENNSYLVANIA, Trustee under Agreement of Louis J. Wiesen, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 75–761.**

United States District Court,
W. D. Pennsylvania.

Sept. 9, 1976.

Henry C. Herchenroether, Jr., Alter, Wright & Barron, Pittsburgh, Pa., for plaintiffs.

Henry G. Barr, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

OPINION

McCUNE, District Judge.

Plaintiff filed this action pursuant to § 1346(a)(1) of The Judicial Code, Act of June 25, 1948, c. 646, 62 Stat. 933, 28 U.S. C.A. § 1346(a), as amended, seeking review of the final decision of the Commissioner of Internal Revenue denying its claim for a refund of federal estate taxes alleged to have been illegally and erroneously assessed and collected. Subsequent to the filing of defendant's answer to plaintiff's complaint, both parties filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which matter is now before this court.

The issue before this court arises under Section 2055 of the Internal Revenue Code, Act of August 16, 1954, c. 736, 68A Stat. 390, 26 U.S.C.A. § 2055, as amended, and the Regulations relating thereto.

The dispute involved herein as submitted to the court arises out of the following stipulation of facts:

Plaintiff, McDowell National Bank of Sharon, Pennsylvania, is the Trustee under an Irrevocable Trust Agreement executed on November 20, 1961, between McDowell and Louis J. Wiesen, deceased.

Mr. Wiesen died on December 20, 1969, and was survived by the following life beneficiaries of said Trust: his wife, Virginia P. Wiesen, 75 years of age at the time of his death; his son, John W. Wiesen, 47 years of age at the time of his death; his sister, Martha W. Daley, 69 years of age at the time of his death and his brother-in-law, Eugene O. Daley, 72 years of age at the time of his death.

Mr. Wiesen's Trust provided for the establishment of two separate funds at his death. First, a Marital Trust Fund, which was fully funded in accordance with the provisions of the trust agreement, and second, a Charitable Trust Fund which was to receive the balance of the assets remaining in the trust following distribution of the value of the full marital deduction, less any estate taxes due.

The Charitable Trust Fund provided for life estates for the four named income beneficiaries after Mr. Wiesen's death, with the remainder to be given to the Salvation Army, a duly qualified charitable and religious corporation incorporated under the laws of the state of New York, within five years after the death of the last remaining named income beneficiary, subject to the provision that if this remainder interest would be subject to taxes the remainder would escheat to this Commonwealth of Pennsylvania subject to the rights of any intestate heirs of Mr. Wiesen.

In addition to the Trustee's powers under the law, certain discretionary powers were also granted to the Trustee by the Trust Agreement, and are set forth in part as follows:

"Article V . . .

"Trustee is authorized and empowered . . .

"1. To retain, . . . and to purchase . . ., any property, real, personal, or mixed, whether or not such property is authorized for investment by law, or is unsecured, unproductive, or of a wasting nature, all without diversification as to kind and amount.

\*　\*　\*　\*　\*　\*

"12. To manage, invest and re-invest the trust CORPUS and the TRUST FUNDS thereof, . . . in any stocks, shares, bonds, notes, debenture, trust certificate, participations or other securities, investment, or property, real, personal or mixed, . . . without regard for any limitation of investments now or hereafter defined by law as mandatory for Trustees in making investments of trust funds, except all such determinations shall be made with due care and ordinary prudence.

\*　\*　\*　\*　\*　\*

"17. To treat as income or as principal or to apportion between income and principal any dividends, stock dividends, rights, gains, interest, increment, rents, issues and profits derived from any property or CORPUS at any time constituting the whole or any part of the TRUST CORPUS and generally to determine what part of the receipts of the trust is income and what is principal, whether or not such property is wasting or unproductive, . . . .; to make or provide such reserves out of income or principal as they deem proper for expenses, taxes and/or other liabilities of this TRUST; to pay from income or from principal or to apportion between income and principal any expenses of making or changing investments . . . and generally to determine what part of the expenses of the TRUST shall be charged to principal and what part to income; and to determine as between separate funds the allocation of income, gains, profits and losses.

\*　\*　\*　\*　\*　\*

"Article VI . . .

"7. If by the adversity of monetary, or economic affairs, or otherwise, the purchasing dollar power of the income distributable hereunder shall be or become inadequate or insufficient for the herein INTENDED support and maintenance or other requirements, of the wife of DONOR, and/or the other named DISTRIBUTEES, then TRUSTEE, after deferred payment purchase contracts of capital assets of any of named DISTRIBUTEES become exhausted or ineffective, as a distributive substitute to supply the INTENDED support, maintenance and requirements aforesaid, may apply, if necessary to any court or authority of competent jurisdiction, for a decree, ruling or authority CY PRES to invade or use CORPUS for the required needs aforesaid to the extent consistent with preservation of the . . . CHARITABLE DONATION. . . . While said TRUSTEE may invade CORPUS for compelling reasons, without adversely affecting the ultimate donative intent of DONOR, the guiding standards therefor are the procedural recourse to an authoritative superior to supplement its factual determination of the time and extent of such CORPUS invasion with de minimus impact on

the ultimate . . . CHARITABLE DONATION.

\* \* \* \* \* \*

"12. TRUSTEE herein and hereby is given express power and authority to make charitable donations from time to time out of ORDINARY income of the CORPUS . . . to THE SALVATION ARMY, SHARON UNIT, for charitable uses and purposes consistent with the donative intent expressed. . . ."

\* \* \* \* \* \*

Plaintiff, as Trustee, duly executed and filed the United States Estate Tax Return of the estate, subsequently supplemented by an amended return, and declared no estate tax payable, claiming a charitable deduction against the Federal Estate tax value of the estate for the residuary remainder gift to The Salvation Army made in the Trust Agreement. This charitable deduction was subsequently disallowed by the Internal Revenue Service auditor and by all subsequent administrative levels of the Service.

The Commissioner of Internal Revenue assessed a federal estate tax of $35,257.80 against the plaintiff as trustee of the estate, and on or about April 12, 1973, plaintiff paid the assessment of $35,257.80 plus interest in the amount of $4,323.67, for a total payment of $39,581.47. The assessment of said deficiency by the Commissioner of Internal Revenue was based upon the determination that decedent's taxable estate less the allowable deductions (not including the specific exemption) for funeral and administrative expenses, debts and mortgages and the allowable marital deduction was $208,526.00, leaving a net taxable estate after the specific exemption of $148,526.00.

In the determination of the net taxable estate, and therefore, the determination of said deficiency of $35,257.80, the Commissioner of Internal Revenue refused to allow a charitable deduction for the value of the property passing to the Salvation Army in remainder on termination of the trust upon the death of the last surviving named life income beneficiary.

On or about August 13, 1973, plaintiff timely filed with the Internal Revenue Service a claim for a refund of estate tax and interest assessed in the amount of $29,097.78, said amount reflecting a charitable deduction for the present actuarial value of the remainder interest of the Salvation Army in the Wiesen Trust, and therein demanded the refund of such amount, together with interest as provided by law. Subsequent thereto, the Commissioner of Internal Revenue disallowed in full the claim for refund and notified plaintiff to that effect.

The sole issue confronting the court is whether or not the trust instrument which grants the Trustee the power to invade the trust corpus in favor of the life income beneficiaries is limited by an ascertainable standard which would render the value of the charitable remainder ascertainable and therefore deductible from the decedent's gross estate under Section 2055 of the Internal Revenue Code.

Section 2055 of the Internal Revenue Code of 1954, as amended, authorizes a deduction from taxpayer's gross estate of the value of bequests or legacies to or for the use of qualifying charitable organizations. Such a bequest can be in the form of a remainder and a deduction is permitted if the value of the remainder interest is presently ascertainable, and hence severable from the noncharitable interest. Treasury Regulation § 20.2055–2(a) covers situations such as the one presently before the court where the charitable transfer consists of a remainder interest with the intervening life estate belonging to a noncharitable beneficiary. This regulation states:

" . . . a deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest . . . . Thus, if money or property is placed in trust to pay the income to an individual during his life . . . and then to pay the principal to a charitable organization, the present value of the remainder is deductible." Treas.Reg. § 20.2055–2(a).

Where a trustee has the power to divert the principal to a noncharitable use,

" . . . the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power." Treas.Reg. § 20.2055–2(b).

In a case such as this, a court must apply a two-step analysis. *In re: Estate of McCoy,* 511 F.2d 1090, 1093 (6th Cir. 1975). First, the court must determine if the language of the will or trust conditions invasion of the corpus on a "presently ascertainable" standard so that "the amount which will be diverted from the charity and the present value of the bequest become adequately measurable . . . ." *Merchants National Bank of Boston v. Commissioner,* 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943). If the court determines that a presently ascertainable standard is present, the court must determine the value of the amount which will eventually go to the charity and allow a charitable deduction therefor. *Lincoln Rochester Trust Co. v. McGowan,* 217 F.2d 287 (2d Cir. 1954). Second, once concluded that the authorized invasion of the trust's corpus is limited by a "presently ascertainable" standard, " . . . it becomes necessary to examine the remoteness of invasion, or the extent of possible invasion, in terms of the standard, to determine the likelihood that the charity will take and the value of what it will receive." *Newton Trust Co. v. Commissioner,* 160 F.2d 175, 178–9 (1st Cir. 1947). See also, *In Re: Estate of McCoy, supra; United States v. Commercial National Bank of Kansas City,* 404 F.2d 927, 930 (10th Cir. 1968), *cert. den.* 393 U.S. 1000, 89 S.Ct. 487, 21 L.Ed.2d 465 (1968).

As noted, the second question only becomes pertinent when an ascertainable standard is found by the court to exist. In other words, if the standard for the power of invasion is not ascertainable, no occasion exists for examining the possibility of invasion and the remoteness thereof, for without such a standard, any calculation of the possibility of invasion could only be highly conjectural. *Newton Trust Co. v. Commissioner, supra;* See also, *Mercantile-Safe Deposit and Trust Co. v. United States,* 252 F.Supp. 191, 193 (D.Md.1966), n.1, and the cases cited therein.

Turning, therefore, to an analysis of the first question to be resolved, it is necessary to consider the parameters for a "presently ascertainable" standard as established by three Supreme Court cases. In *Ithaca Trust Co. v. United States,* 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929), the trustee was granted the authority to invade corpus for any sum "that may be necessary to suitably maintain [the life beneficiary] in as much comfort as she now enjoys." The Court held that the value of the charitable remainder was deductible because "the standard was fixed in fact and capable of being stated in definite terms of money." *Id.*

The second Supreme Court case, *Merchants National Bank of Boston v. Commissioner, supra,* involved a testamentary trust from which the income was to be paid to the testator's widow for life, and on her death all but a specified amount of the principal was to be distributed to designated charities. The trustee was authorized to invade the corpus "for [the] comfort, support, maintenance, and/or happiness" of the widow and was directed to exercise that discretion with liberality towards the widow and to consider her "welfare, comfort and happiness prior to claims of residuary beneficiaries." The Court denied the charitable deduction, stating that "the extent to which the principal might be used was not restricted by a fixed standard based on the widow's prior way of life." *Cf. Ithaca Trust Co. v. United States, supra.* The Court held that no definite and ascertainable standard was presented since the definition of what may be required for a widow's "happiness" was impossible to determine, and hence, the ultimate charitable gift was incapable of being accurately ascertained. Within the test established by *Ithaca Trust Co. v. United States, supra,* the Court held that this was not a "standard was fixed in fact and capable of being stated in definite terms of money."

In the third Supreme Court decision, *Henslee v. Union Planters National Bank and Trust Company,* 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949), based upon the Court's analysis in the *Merchants National Bank, supra,* decision, the Court found the chance of invasion on behalf of an 85 year old widow with independent income to be "remote," but held that a power to invade corpus for the woman's "pleasure, comfort and welfare," was not subject to a standard sufficiently definite to make the amount of the charitable remainders a presently ascertainable sum.

■ In accordance with the criteria presented in the three above-mentioned cases, this court must initially consider whether the will provides a sufficiently definite standard limiting the extent of possible invasion for the benefit of noncharitable interests so that the value of the charitable remainder was "presently ascertainable" at the time of the testator's death. In making a determination on this question, extrinsic evidence such as the financial circumstances of the life beneficiary, though relevant to the remoteness of invasion, are irrelevant as to whether the charitable interest is "presently ascertainable" and are therefore inadmissible. *Henslee v. Union Planters National Bank, supra; Zentmayer's Estate v. Commissioner,* 336 F.2d 488, 490 (3d Cir. 1964); *Seubert v. Shaughnessy,* 233 F.2d 134, 137 (2d Cir. 1956); *Mercantile-Safe Deposit and Trust Co. v. United States, supra.* Thus, no arguments can be entertained by this court which would show that the respective beneficiaries' independent means were such that the principal would "never" be invaded until it is first established that the will set forth a definite ascertainable standard. *Henslee v. Union Planters National Bank, supra.*

It is the government's contention that the wording present in Article VI, ¶ 7, of the Trust Agreement, *supra,* entitling the Trustee to invade the trust corpus for the benefit of the "support and maintenance or *other requirements*" (emphasis supplied) of the named life income beneficiaries renders the standard of invasion unascertainable and hence non-deductible from decedent's gross estate under § 2055 of the Internal Revenue Code. In support of their contention, the government has cited the case of *State Street Bank and Trust Co. v. United States,* 313 F.2d 29 (1st Cir. 1963) for the proposition that the use of additional words with an ascertainable "standard of living" requirement[1] renders the standard of invasion unascertainable. It is argued by the government that had the trustee's power of invasion been limited *only* to "support and maintenance" of the named life income beneficiaries in their former stations of life, the standard of invasion would have been "fixed in fact and capable of being stated in definite terms of money" within the ambit of the rule stated in *Ithaca Trust Co. v. United States, supra; Newton Trust Co. v. Commissioner, supra,* at 179.[2]

1. A similar issue was presented in this case, namely, whether a power in the trustees of a testamentary trust to distribute principal to the testator's widow as they "in their uncontrolled discretion may deem necessary or advisable for her comfortable support and maintenance *and for any other reasonable requirement,*" (emphasis supplied), made the value of the charitable remainder unascertainable for lack of a definite standard, and hence non-deductible under § 2055.

The Court stated that the use of the additional words, "any other reasonable [need]" imported an additional meaning to the trust's requirement of provision "for her comfortable support and maintenance" and thereby authorized the trustees to provide " . . . something more; to wit, a higher—and hence immeasurable—standard."

The Court felt that the testator could have clearly provided for his widow's "comfortable support and maintenance" by those terms alone, and thus, when he chose to say something more, with complete absence of specificity, the Court stated that " . . . we believe the risk of uncertainty should be [testator's] and not the government's."

2. See also: *Salisbury v. United States,* 377 F.2d 700, 704 (2d Cir. 1967), wherein the Court noted that words such as "support and maintenance" are referable to a fixed objective standard of living, and other similar language also connotes the "objective station of life" standard. *Peoples Trust Co. of Bergen County v. United States,* 444 F.2d 193, 195 (3d Cir. 1971), n.2, and the cases cited therein.

It is clear that if the construction applied by the Court in the *State Street Bank and Trust Co.* case, *supra,* is deemed controlling by this court, the government's argument must prevail. Thus, if it is determined by this court that the addition of the words "or other requirements" to the standard of living clause of the trust agreement, in effect, permits uncontrolled discretion on the part of the trustee to invade corpus for the benefit of the named life income beneficiaries, no objective ascertainable standard is presented, and therefore, the deductibility of the charitable remainder interest must fail.

However, this court is of the opinion that the mere use of such additional language with the standard of living clause does not render the value of the charitable remainder unascertainable and hence, non-deductible for the following reasons.

First, the central issue with respect to the trustee's powers of invasion is not what the trustee is likely to do, but what it has the power to do, and whether that power is limited by an ascertainable standard. *Provident National Bank v. United States,* 353 F.Supp. 1025, 1028 (E.D.Pa. 1973); *Estate of Stewart v. Commissioner of Internal Revenue,* 436 F.2d 1281, 1287 (3d Cir. 1971); *Zentmayer's Estate v. Commissioner of Internal Revenue, supra,* at page 490. As stated by the court in the *Provident National Bank v. United States, supra,* decision:

> "The mere existence of the power to erode corpus is sufficient to avoid the deduction [citation omitted] because the remainderman could not contest a given allocation which depletes corpus in favor of the life tenant. Therefore, the Court must first determine whether or not testator intended to restrict allocations by some ascertainable standard found therein." (at page 1028).

Within this general principle, it is clear that testator's intention throughout the trust instrument was to create a charitable donation of the remainder interest to the Salvation Army and to provide some part or all of the support required by the named life income beneficiaries. The trust agreement itself establishes sufficient limitations and controls upon the trustee's power of invasion of the corpus to assure an ascertainable standard to determine the value of the charitable remainder interest.

The particular trust provision which is the subject of the government's ground for non-deductibility, Article VI, ¶ 7, *supra,* clearly and unequivocably limits the trustee's power to invade the corpus in favor of the life beneficiaries by requiring that the principal could be invaded (1) only with court approval, and (2) only to "the extent consistent with preservation of the . . CHARITABLE DONATION."[3] Further, it is the accepted contention of plaintiff that the above restrictions on the grant of discretionary power to the trustee are in harmony with the charitable purpose of the trust instrument as stated in Article I, ¶ 6, as follows, in pertinent part:

> "This trust is created for the purpose of effecting a charitable gift or benefaction of the CORPUS, . . . with reservation of the CORPUS income to . . named DISTRIBUTEES of the family of the DONOR during ONLY the lifetime of such respective named DISTRIBUTEES or survivor of them, to the extent deemed necessary or appropriate under the trust indenture . . . within permissive lawful limitations and reservations *consistent with and not disruptive of a charitable gift* as herein intended." (Emphasis supplied).

It is therefore clear that the testator intended to restrict allocations by virtue of

---

**3.** The trustee's authority to invade is further controlled and limited by the use of the following additional language in Article VI, ¶ 7: " . . . without adversely affecting the ultimate donative intent of DONOR . . ." and " . . . with de minimus impact on the ultimate . . . CHARITABLE DONATION."

Thus, the trust instrument's provision for corpus invasion for "other requirements" is not of such a nature so as to vest completely uncontrolled and unbridled discretion in the trustee in light of the intended restrictions and limitations inherent therein.

these trust provisions, and thus an ascertainable standard within § 2055 of the Internal Revenue Code and the regulations and cases pertinent thereto has been established.

Second, the government's contention that the case of *State Street Bank and Trust Co. v. United States, supra,* controls the instant situation is rejected since the language of the trust instrument in that case which permitted invasion of principle by the trustee for the benefit of the life beneficiary as the trustee "in their *uncontrolled discretion* (emphasis supplied) may deem necessary or advisable for her comfortable support and maintenance and for any other reasonable requirement . . . ," is distinguishable. Further, no ascertainable standard was presented in the instrument itself in that case, whereas the trust before the court in this case, as stated earlier, has sufficient limitation contained within it so as to create a sufficiently ascertainable standard. See: *Provident National Bank v. United States, supra.*

Therefore, since this court has determined that the testator's intent was to clearly establish and maintain a charitable remainder interest in the trust corpus, it is unnecessary to proceed further with regard to the restrictions on the exercise of the trustee's discretion as mandated by the applicable Pennsylvania law.[4]

Under estate tax laws, the clear congressional policy is not to benefit the national revenue at the expense of charitable institutions. *Blodget v. Delaney,* 201 F.2d 589, 594 (1st Cir. 1953).

Thus, having concluded that the language of the trust conditioned invasion of the corpus on a "presently ascertainable" standard, it is necessary to turn to the second stage of analysis and examine the remoteness of invasion or the extent of possible invasion of the trust corpus in an effort to determine the likelihood that the charitable beneficiary will receive its relative share.

 In an effort to reach this determination, certain factual issues are pertinent, namely, the independent means presently available to the respective life income beneficiaries, so that the necessity or likelihood of invasion is remote, and further, the respective ages of the named beneficiaries. Since the first determination cannot be made without a further inquiry into the financial status of the named beneficiaries, it is the conclusion of this court that a pertinent factual issue remains and, therefore, the parties' respective motions for summary judgment are improper at this time and are hereby denied.

---

4. Plaintiff's arguments that a trustee must act impartially in asking discretionary decisions in the trust administration affecting the adverse interests of two groups of beneficiaries, so as to create an objective ascertainable standard, although unnecessary for this determination, are meritorious. See, *People's Trust Co. of Bergen County v. United States, supra: Provident National Bank v. United States, supra,* at p. 1031; *Weiss' Estate,* 454 Pa. 114, 309 A.2d 793 (1973); *Thompson's Estate,* 262 Pa. 278, 105 A. 273 (1918).