WILLIAM F., MABLE E., AND MARGARET K. QUARRIE CHARITABLE FUND, THE NORTHERN TRUST COMPANY, TRUSTEE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6837–77X.     Filed May 8, 1978.

*William P. Sutter, James R. Hellige,* and *Francis O. McDermott,* for the petitioner.

*Byron J. Furseth,* for the respondent.

TANNENWALD, *Judge:* Respondent determined that petitioner is a private foundation as defined in section 509(a).[1] Petitioner brought an action under section 7428 for a declaratory judgment that it is not a private foundation because it is an organization described in section 509(a)(3).

## OPINION

This case was submitted upon the basis of the pleadings and the facts recited in the administrative record, which are assumed to be true for the purposes of this decision. See Rules 122(a) and 217, Tax Court Rules of Practice and Procedure.

Petitioner is an organization described in section 501(c)(3) and exempt from taxation under section 501(a). The Northern Trust Co., petitioner's trustee, had its principal place of business in Chicago, Ill., at the time of filing the petition herein. Petitioner filed its Application for Recognition of Exemption (Form 1023) with the District Office of the Internal Revenue Service in Chicago, Ill.

Mable E. Quarrie (Mrs. Quarrie) died on January 17, 1974. She was the widow of William F. Quarrie (Mr. Quarrie), who died on November 15, 1956. Under the terms of a trust created by Mr. Quarrie in 1942, Mrs. Quarrie had the power from time to time to appoint in place of certain named charitable beneficiaries[2] "one or more charitable, scientific or educational organizations" to receive the income and principal of the trust, such income and principal "to be used for such charitable, scientific or educational purposes and in such manner" as she might specify. On July 2, 1960, Mrs. Quarrie executed the power of appointment[3] granted to her. Pursuant to such power, The Northern Trust Co. was designated as trustee of a fund (petitioner) for the benefit of the

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] A daughter, who died on Apr. 20, 1976, and a niece (Rilla Sharpe Allen) were entitled to a portion of the income of said trust during their respective lives. Their interests are not material to the issues involved herein.

[3] Mrs. Quarrie was not competent to exercise a legal instrument for a period that began before Nov. 20, 1970, and continued until her death. In his reply brief, respondent states that he does not concede that such incompetency made her exercise of the power, and therefore the trust, irrevocable on Nov. 20, 1970, but does not elaborate on the operative consequences of Mrs. Quarrie's condition on that date. In any event, the effect of incompetency would be relevant only in connection with the application of the transitional rule of the integral part test (sec. 1.509(a)–4(i)(4)(iii), Income Tax Regs.) — an issue which we do not reach herein. See p. 191 *infra.*

Chicago Community Trust, Columbia-Presbyterian Medical Center Fund, Inc., and the Art Institute of Chicago.

The designation provided that the net income of the trust (other than the $1,000 per year to be paid to Rilla Sharpe Allen, see n. 2 *supra*) was to be distributed to petitioner, which was then to distribute it for the benefit of the Chicago Community Trust, Columbia-Presbyterian Medical Center Fund, Inc., and the Art Institute of Chicago.[4] The designation further provided that, upon the death of Rilla Sharpe Allen, the principal of the trust was to be distributed to petitioner and that petitioner was to pay $5,000 to Father Flanagan's Boys' Town and hold the balance in trust, with the income to be distributed as follows: 2 percent to the Art Institute of Chicago; 49 percent in such manner as the executive committee of the Chicago Community Trust shall deem advisable for the advancement of medical education and research; and 49 percent for the benefit of Columbia-Presbyterian Medical Center Fund, Inc., in such manner as its board of trustees deems advisable for the advancement of medical education and research.[5] The designation made the following provision regarding substitution of beneficiaries:

In the event that at some future date, any of the aforesaid charitable uses in the judgment of The Northern Trust Company shall have become unnecessary, undesirable, impracticable, impossible or no longer adapted to the needs of the public, the income otherwise to be devoted to such use shall be distributed to such charitable, scientific, educational or religious corporations, trusts, funds or foundations as The Northern Trust Company may select to be used for their general purposes.

The sole issue herein is whether petitioner is a private foundation, and that issue in the first instance turns upon the impact of the above-quoted provision of the designation. The definition of a private foundation in section 509(a) is a definition by exclusion. All organizations described in section 501(c)(3) are

---

[4]Respondent determined that the designation did not require the trustee to distribute the income currently or in fixed shares, with the result that petitioner failed to meet the transitional rule of the integral part test (sec. 1.509(a)–4(i)(4)(iv), Income Tax Regs.). Respondent however, did not elaborate on this issue on brief. In any event, because of our disposition of the case, we need not address this issue. See pp. 190–191 *infra*.

[5]Respondent concedes, for the purposes of this case, that the four designated organizations are publicly supported within the meaning of sec. 509(a)(1) and (2) and the regulation thereunder (sec. 1.509(a)–2 and –3, Income Tax Regs.).

private foundations except those specified in section 509(a)(1) through (4).[6] The parties agree that petitioner is a section 501(c)(3) organization and thus, presumptively a private foundation. Sec. 508(b). Petitioner claims that it is excluded from private foundation status because it is a supporting organization described by section 509(a)(3), which provides—

(a) GENERAL RULE.—For purposes of this title, the term "private foundation" means a domestic or foreign organization described in section 501(c)(3) other than—

*　　*　　*　　*　　*　　*　　*

(3) an organization which—

(A) is organized, and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more specified organizations described in paragraph (1) or (2),

(B) is operated, supervised, or controlled by or in connection with one or more organizations described in paragraph (1) or (2), and

---

[6]SEC. 509. PRIVATE FOUNDATION DEFINED.

(a) GENERAL RULE.—For purposes of this title, the term "private foundation" means a domestic or foreign organization described in section 501(c)(3) other than—

(1) an organization described in section 170(b)(1)(A) (other than in clauses (vii) and (viii));

(2) an organization which—

(A) normally receives more than one-third of its support in each taxable year from any combination of—

(i) gifts, grants, contributions, or membership fees, and

(ii) gross receipts from admissions, sales of merchandise, performance of services, or furnishing of facilities, in an activity which is not an unrelated trade or business (within the meaning of section 513), not including such receipts from any person, or from any bureau or similar agency of a governmental unit (as described in section 170(c)(1)), in any taxable year to the extent such receipts exceed the greater of $5,000 or 1 percent of the organization's support in such taxable year,

from persons other than disqualified persons (as defined in section 4946) with respect to the organization, from governmental units described in section 170(c)(1), or from organizations described in section 170(b)(1)(A) (other than in clauses (vii) and (viii)), and

(B) normally receives not more than one-third of its support in each taxable year from the sum of—

(i) gross investment income (as defined in subsection (e)) and

(ii) the excess (if any) of the amount of the unrelated business taxable income (as defined in section 512) over the amount of the tax imposed by section 511;

(3) an organization which—

(A) is organized, and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more specified organizations described in paragraph (1) or (2),

(B) is operated, supervised, or controlled by or in connection with one or more organizations described in paragraph (1) or (2), and

(C) is not controlled directly or indirectly by one or more disqualified persons (as defined in section 4946) other than foundation managers and other than one or more organizations described in paragraph (1) or (2); and

(4) an organization which is organized and operated exclusively for testing for public safety.

For purposes of paragraph (3), an organization described in paragraph (2) shall be deemed to include an organization described in section 501(c)(4), (5), or (6) which would be described in paragraph (2) if it were an organization described in section 501(c)(3).

(C) is not controlled directly or indirectly by one or more disqualified persons (as defined in section 4946) other than foundation managers and other than one or more organizations described in paragraph (1) or (2);

Respondent has promulgated detailed regulations under section 509(a)(3), which set forth a number of tests (organizational, operational, responsiveness, and integral part) that must be met by an organization in order to come within the exception of section 509(a)(3). Petitioner does not contest the validity of these regulations. Rather, it contends that it meets the requirements thereof. Respondent's main contention is that petitioner fails to meet the organizational test of section 509(a)(3)(A) and section 1.509(a)–4(d), Income Tax Regs., and it is that contention to which we first direct our attention.

Section 509(a)(3)(A) requires that a supporting organization be organized and operated exclusively to support or benefit one or more "specified" publicly supported organizations (organizations described in section 509(a)(1) or (2)). The parties agree that the organizational test in section 1.509(a)–4(d)(4), Income Tax Regs., is applicable to petitioner. It provides, in pertinent part, as follows:

(4) *Designated publicly supported organizations.* (i) If an organization is organized and operated to support one or more publicly supported organizations and it is "operated in connection with" such organization or organizations, then * * * its articles of organization must, for purposes of satisfying the organizational test under section 509(a)(3)(A), designate the "specified" organizations by name. Under the circumstances described in this subparagraph, a supporting organization which has one or more "specified" organizations designated by name in its articles, will not be considered as failing the test of being organized for the benefit of "specified" organizations solely because its articles:

(*a*) Permit a publicly supported organization which is designated by class or purpose, rather than by name, to be substituted for the publicly supported organization or organizations designated by name in the articles, but *only if such substitution is conditioned upon the occurrence of an event which is beyond the control of the supporting organization,* such as loss of exemption, substantial failure or abandonment of operations, or dissolution of the publicly supported organization or organizations designated in the articles;

(*b*) Permit the supporting organization to operate for the benefit of a beneficiary organization which is not a publicly supported organization, but only if such supporting organization is currently operating for the benefit of a publicly supported organization and the possibility of its operating for the benefit of other than a publicly supported organization is a remote contingency; * * *

[Emphasis added.]

Petitioner's trustee has authority to substitute other charitable beneficiaries for those named whenever, in its judgment, the charitable uses have become "unnecessary, undesirable, impracticable, impossible or no longer adapted to the needs of the public." Respondent contends that the trustee's determination to substitute beneficiaries is not "conditioned upon the occurrence of an event which is beyond [its] control." See sec. 1.509(a)–4(d)(4)(i)(*a*), Income Tax Regs. Petitioner argues that the contingencies are similar to examples in respondent's regulations and are no more than those which would require an Illinois court to apply the cy pres doctrine.

While petitioner is literally correct that the circumstances giving rise to the events which can trigger the substitution of beneficiaries are beyond the trustee's control, the nature of those events combined with the trustee's exercise of judgment brings the events within the trustee's control for all practical purposes. This is because the determination that a charitable use has become "undesirable" or "no longer adapted to the needs of the public"[7] requires the trustee to make a judgment as to what is desirable and what are the needs of the public. These are subjective decisions as to which different persons may hold diametrically opposed, but equally reasonable, opinions. Thus, for example, if one of the beneficiaries engaged in medical research and used its funds for genetic research, the trustee could, on the grounds that such research is "undesirable" and not "adapted to the needs of the public," substitute another beneficiary in its place.

Petitioner argues that the "substantial failure * * * of operations" condition in respondent's regulations involves a similar judgment based upon subjective values. While there may be some subjective content to this condition, we think it is of narrow import. In any event, it should not be equated with the obviously broader subjective content implicit in the discretionary language of the designation.[8]

---

[7]Respondent confines his argument to these two conditions and has not argued that any of the words "unnecessary," "impracticable," or "impossible" encompasses a proscribed subjective determination.

[8]There is a similar provision in the transitional rule of the integral part test which permits a trustee to cease making payments to a beneficiary "in the event of certain specific occurrences, such as the loss of exemption under section 501(c)(3) or classification under section 509(a)(1) or (2) by the beneficiary or the failure of the beneficiary to carry out its charitable purpose properly." Sec. 1.509(a)–4(i)(4)(v), Income Tax Regs. None of respondent's examples require the same subjective

Petitioner argues that the language at issue does no more than give the trustee authority to take the same action that an Illinois court would take under the cy pres doctrine. Thus, according to petitioner, such language has no effect other than saving petitioner and its charitable beneficiaries from incurring court costs in clear-cut cases. In so arguing, petitioner seeks to equate such language with the words "impossible, impractical or inexpedient" utilized in applying the cy pres doctrine in Illinois.[9] We find it unnecessary to wend our way through the semantical analysis indulged in by petitioner. It is sufficient to say that its attempt to bring the cy pres doctrine within the ambit of this case should be rejected.

In the first place, the threshold condition, under which the cy pres doctrine comes into play, is the potential failure of a charitable trust which is perceived to flow from the literal execution of its terms. See *Graham Hospital Assn. v. Talley,* 29 Ill. App.3d 190, 329 N.E.2d 918 (App. Ct. 1975); 2 Restatement, Trusts 2d, sec. 399 (1959). Moreover, the doctrine "is an *extraordinary power* not to be used on every occasion where administration of the trust becomes difficult." See *Graham Hospital Assn. v. Talley,* 329 N.E.2d at 921. (Emphasis added.) The exercise of the discretionary powers of the trustee herein is obviously neither so conditioned nor so limited. The importance of such condition and limitation is clearly revealed in *Graham Hospital Assn. v. Talley,* where the court refused to apply the cy pres doctrine prior to the expiration of a 15-year period in which the trustees were given discretionary power in respect of the construction and manner of operation of a hospital, even though the trial court had found construction of the hospital to be impractical, inexpedient, and infeasible.

In the second place, where a trustee (including a trustee of a charitable trust) is given discretionary powers, the Illinois courts

---

judgment that is required of petitioner's trustee. Although a determination of whether a beneficiary has carried out its charitable purposes properly is broader than the other examples, it is determinable by reference to objective standards of measurement such as the governing instruments and law.

[9]The most recent statement of the full test is set forth as follows in *Graham Hospital Assn. v. Talley,* 29 Ill. App.3d 190, 329 N.E.2d 918, 921 (App. Ct. 1975):

"Where literal execution of the charitable gift is impossible, impractical or inexpedient and a general charitable purpose to devote the property to such purposes is apparent, the trust will not be permitted to fail but will be executed by the court cy pres. First Natl. Bank v. Elliott, *supra;* Board of Education v. City of Rockford, 372 Ill. 442, 24 N.E.2d 366 (1939); Mason v. Bloomington Library Ass'n, 237 Ill. 442, 86 N.E. 1044 (1908)."

will not interfere with the exercise of such powers "absent proof of fraud, bad faith or abuse of discretion"; they will not substitute their judgment for that of the trustee merely because they would have acted differently if the powers conferred on the trustee had been conferred upon them. See *Graham Hospital Assn. v. Talley*, 329 N.E.2d at 922. See also 3 A. Scott, Trusts 187 (3d ed. 1967); 1 Restatement, Trusts 2d, sec. 187 (1959). The fact that the attorney general of Illinois or any beneficiary of petitioner could bring an action for review does not change the scope of the permissible exercise of a trustee's discretionary power. See Ill. Rev. Stat. ch. 14, secs. 51–64 (Smith-Hurd 1963), and particularly sec. 62.

The long and the short of the matter is that the proper analysis of the applicability of the cy pres doctrine, coupled with the policy of noninterference by the courts in the exercise of a trustee's discretionary powers, clearly reveals that, although the trustee's powers herein can be considered as a substitute for that doctrine, they are not its equivalent.

Moreover, as we read respondent's regulations, they seek to establish an "ascertainable standard" not unlike that which applies in determining whether a power of invasion for the benefit of the life beneficiary of a trust should be held not to preclude the deduction for estate tax purposes of a charitable remainder. The language of the designation herein would not pass muster in this context. *Zentmayer's Estate v. Commissioner*, 336 F.2d 488 (3d Cir. 1964), affg. T.C. Memo. 1963–197. Compare *McDowell Nat. Bank of Sharon, Pa. v. United States*, 419 F. Supp. 1164 (W.D. Pa. 1976).

The legislative history and the statutory scheme of section 509(a)(3) also furnish some guidance to decision herein. Prior to the enactment of the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487, the Internal Revenue Code did not contain a statutory definition of a private foundation. That act added the definition as well as a series of excise taxes that operate as penalties on certain activities of such foundations. Pub. L. 91–172, sec. 101, 83 Stat. 492. See secs. 4941 through 4945. The definition is all-inclusive, subject only to specified exclusions. See n. 5 *supra*. A careful reading of portions of the committee reports dealing with section 509(a) reveals a concern over the fact that private foundations had been "loosely used with a few tax consequences" and the need carefully to hone the definitional rules to make

certain that the overall objectives of the 1969 Act were not undermined. H. Rept. 91–413 (Part 1) 40–41 (1969), 1969–3 C.B. 200, 226–227; S. Rept. 91–552, 56–59 (1969), 1969–3 C.B. 423, 460–462; Conf. Rept. 91–782, 288–289 (1969), 1969–3 C.B. 644, 651.

These portions of the House and Senate reports further indicate that the purpose of section 509(a)(3) was limited, namely, to exclude from private foundation status, organizations which were theoretically separate from publicly supported organizations but were not thought of as private foundations because they were operated in close association with publicly supported organizations. The reports give, as examples of section 509(a)(3) organizations, religious organizations other than churches, the Hershey Trust (which is organized and operated for and in connection with a specific school), and university presses. See also 115 Cong. Rec. 37,514–37,515 (1969).

The assumption underlying the exclusions from private foundation status appears to have been that the excluded organizations are subject to public scrutiny and need not be subject to Government regulation as well. See Joint Comm. on Internal Revenue Taxation and Comm. on Finance, 91st Cong., 1st Sess., Summary of H.R. 13270, The Tax Reform Act of 1969, p. 21 (Comm. Print 1969); see generally D. Halperin, "Private Foundations—Definition and Termination," 29th Ann. N.Y.U. Tax Inst. 1783, 1784–1785 (1971). In the case of supporting organizations described in section 509(a)(3), the public scrutiny derives from the publicly supported beneficiaries, which, in turn, oversee the activities of the supporting organization. The provisions of section 509(a)(3) and the regulations thereunder are designed to assure that the publicly supported beneficiaries of a section 509(a)(3) organization have both the ability and the motivation to do so. See especially section 1.509(a)–4(f) through (i), Income Tax Regs. This oversight function is substantially weakened if the trustee has broad authority to substitute beneficiaries and, thus, it is essential that such authority be strictly limited.

We hold that petitioner fails to meet the organizational test of section 509(a)(3)(A) and section 1.509(a)–4(d)(4)(i)(*a*), Income Tax Regs. In light of this holding, we need not reach the further questions raised by the parties involving the applicability of the remoteness test contained in section 1.509(a)–4(d)(4)(i)(*b*), Income Tax Regs., or the operational, responsiveness, and integral

part tests (see generally sec. 509 and sec. 1.509(a)–4, Income Tax Regs.), including the possible effect of Mrs. Quarrie's incompetency on the irrevocability of the designation on November 20, 1970, for purposes of the "Integral part test; transitional rule" (see sec. 1.509(a)–4(i)(4), Income Tax Regs.; n. 3 *supra*).

Petitioner also asserts a claim for attorneys' fees under 42 U.S.C. sec. 1988. We have previously held that this provision is inapplicable to Tax Court proceedings. *Key Buick Co. v. Commissioner*, 68 T.C. 178 (1977). Moreover, since petitioner is not the prevailing party, it would not in any event be entitled to attorneys' fees.

*Decision will be entered for the respondent.*