RIVERTON AREA FIRE PROTECTION DISTRICT, Plaintiff and Counter-defendant-Appellee, v. RIVERTON VOLUNTEER FIRE DEPARTMENT, Defendant and Counterplaintiff-Appellant (Bob Robb *et al.*, Plaintiffs; Riverton Volunteer Fire Department, Defendant-Appellant; Riverton Area Fire Protection District, Defendant-Appellee; The People *ex rel.* Neil Hartigan, Attorney General, Plaintiff-Appellee).

Fourth District   No. 4—90—0374

Opinion filed February 13, 1991.—Rehearing denied March 12, 1991.

Richard A. Hollis, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, So-

licitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for appellee People *ex rel.* Hartigan.

Scott, Beeman & Scott, P.C., of Springfield, for appellee Riverton Area Fire Protection District.

JUSTICE STEIGMANN delivered the opinion of the court:

Defendant, Riverton Volunteer Fire Department (Corporation), appeals from a summary judgment motion granted in favor of plaintiff, Riverton Area Fire Protection District (District). Because we find no genuine issue of material fact present on this record, we affirm.

## I. FACTS

The Corporation was founded in 1906 as a not-for-profit corporation and is currently subject to the General Not For Profit Corporation Act of 1986 (Ill. Rev. Stat. 1989, ch. 32, par. 101.01 *et seq.*). Its corporate purpose, as stated in its original articles of incorporation, was "to protect the lives and property in the village of Riverton against fire."

From 1906 through 1975, the Corporation's source of revenue was provided through contributions of money and property from citizens, area fund-raisers (such as chicken and spaghetti dinners), and tax revenues donated by Clearlake Township, Sangamon County, and the Villages of Clearlake, Spaulding, and Riverton. Residents outside these areas paid annual fees of $12 to $15 to receive fire protection from the Corporation. These revenues were used by the Corporation to purchase firetrucks, fire-fighting equipment, and real estate on which two firehouses were built. The sole purpose of raising these funds was to purchase assets necessary to provide fire protection services.

The District was created in June 1975 for the purpose of providing fire protection services within the district through taxation. (See Ill. Rev. Stat. 1989, ch. 127½, par. 21 *et seq.* (authorizing the creation of fire protection districts).) In November 1980, the Village of Riverton was annexed into the District. See Ill. Rev. Stat. 1989, ch. 127½, par. 23 (authorizing annexation).

Consistent with its purpose, the District entered into an agreement with the Corporation on March 31, 1981, for fire protection services. In essence, the contract provided that the Corporation would provide fire protection to the District in exchange for tax revenues raised by the District under its authority as a taxing body. The District agreed to transfer two fire trucks and some equipment to the Corporation as its agent, but to retain ownership. The second para-

graph of the same clause stated as follows:

> "With respect to fire trucks, engines, vehicles, and all other fire fighting equipment and personal property presently owned by DEPARTMENT [Corporation] and any trucks, engines, vehicles, fire fighting equipment and any other personal property hereinafter acquired by DEPARTMENT with its own funds or resources, unless previously disposed of, sold, exchanged, or otherwise utilized by DEPARTMENT, shall, in the event of termination or dissolution of the Riverton Volunteer Fire Department, be sold and title transferred to DISTRICT by DEPARTMENT at its then full market value to be determined by competent appraisal(s) of disinterested parties."

The parties further agreed to meet annually for the purpose of creating a budget and that expenses would be handled as follows:

> "10. The DEPARTMENT [Corporation] shall, on receipt of monies from the DISTRICT, make payment of all expenses hereinabove specified and furnish to the DISTRICT evidence of such payment of expenses from time to time so that the DISTRICT shall not be further liable for the payment of such costs or expenses."

During the term of this agreement, the Corporation occasionally declined to provide the District with copies of bills or statements that showed its expenses despite the District's requests to do so. Even though the District did not always have evidence of the Corporation's expenses, the District continued to supply tax revenues to the Corporation during 1987 and 1988.

The District filed its initial complaint against the Corporation in August 1987 and amended it in September 1987, seeking specific performance of the contract, damages for breach of contract, and an equitable accounting of the funds received by the Corporation from the District. This latter claim was based on the allegation that the Corporation held these funds in trust for the public. The Corporation denied the allegations, contending that it was "not the fiduciary of the Plaintiff, but only an independent contractor," and filed a counterclaim. In 1988, the District gave notice to the Corporation of its intent to terminate the agreement as allowed under the contract. The contract terminated on June 30, 1989.

On May 18, 1989, the Corporation amended its articles of incorporation to read as follows: "The corporation is organized exclusively for the charitable, educational, religious, or scientific purposes within the meaning of section 502(c)(3) of the Internal Revenue Code."

On May 24, 1989, 40 residents of the fire protection district filed

a complaint for injunctive relief against the Corporation, seeking to prevent the sale or conveyance of corporate assets that would significantly deprive them of fire protection. The residents asserted standing as third-party beneficiaries under the agreement and as beneficiaries of a resulting trust. The trial court consolidated these two actions and issued a temporary injunction on June 21, 1989, transferring possession of all fire-fighting equipment to the District until further order of the court.

On October 20, 1989, the Illinois Attorney General filed an action against the Corporation, pursuant to the Charitable Trust Act (Act) (Ill. Rev. Stat. 1989, ch. 14, par. 51 *et seq.*), seeking an accounting of charitable assets, in addition to declaratory, injunctive, and other equitable relief. This action was consolidated with the actions filed earlier by the District and the residents. The Attorney General alleged that the Corporation was a charitable trust and that the change in its corporate purpose required the imposition of a constructive trust.

The Attorney General filed a motion for summary judgment (Ill. Rev. Stat. 1989, ch. 110, pars. 2—1005(a), (b)) in March 1990, requesting the court to find that the Corporation held assets as a charitable trust and that those assets should be delivered to the District under the equitable doctrine of *cy pres*. After a hearing, the trial court granted the Attorney General's motion, and the Corporation appeals from that summary judgment order.

## II. ANALYSIS

■ In reviewing the order for summary judgment, this court must consider all of the facts in the record and all of the grounds alleged by the parties in order to determine whether a genuine issue of material fact exists. (*Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 718, 506 N.E.2d 1052, 1055; *Casteel v. Smith* (1982), 109 Ill. App. 3d 1094, 1098, 441 N.E.2d 860, 863.) Summary judgment is proper when there is no factual determination to be made by the trier of fact and the movant is entitled to judgment as a matter of law. *Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 44, 411 N.E.2d 229, 231; *Seefeldt*, 154 Ill. App. 3d at 718, 506 N.E.2d at 1055.

■ On appeal, defendant claims that the trial court incorrectly applied the common law doctrine of *cy pres* to it, a not-for-profit corporation. In order to determine whether summary judgment was proper, we must review the trial court's legal conclusions. Although the trial court made no specific findings, this court may assume that all issues were found in favor of the Attorney General's motion for

summary judgment. See *Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938, 959, 466 N.E.2d 977, 992.

The Attorney General's motion for summary judgment was premised upon two legal determinations: (1) the Corporation was a charitable corporation; and (2) the doctrine of *cy pres* was applicable.

### 1. *Is the Corporation a charitable trust?*

■ A charitable trust is "one which is for the public benefit." (G. Bogert, Trusts and Trustees §369, at 65 (rev. 2d ed. 1977).) Under section 3 of the Act, a corporation may be considered a trustee of a charitable trust if it holds property "for any charitable purpose." (Ill. Rev. Stat. 1989, ch. 14, par. 53.) "A purpose is charitable if its accomplishment is of such social interest to the community as to justify permitting the property to be devoted to the purpose in perpetuity." Restatement (Second) of Trusts §368, Comment b, at 248 (1959), quoted in *People ex rel. Scott v. George F. Harding Museum* (1978), 58 Ill. App. 3d 408, 415, 374 N.E.2d 756, 761.

■ In *Decatur Sports Foundation v. Department of Revenue* (1988), 177 Ill. App. 3d 696, 532 N.E.2d 576, this court articulated a six-part test to determine whether a corporation is operating as a charitable organization for purposes of exemption from tax liability. In order to be considered a charitable organization, the following six criteria must be met: (1) an indefinite number of persons receive the benefits of the organization; (2) the organization has no capital, capital stock, or shareholders; (3) funds are derived mainly from private and public charity, and the funds are held in trust for the objects and purposes expressed in the organization's charter; (4) the charity is dispensed to all who need and apply for it; (5) no obstacles appear to be placed in the way of those seeking the benefits; and (6) the primary use of the property is for charitable purposes. *Decatur Sports*, 177 Ill. App. 3d at 708, 532 N.E.2d at 585.

■ Fire protection can be considered a charitable purpose. (See G. Bogert, Trusts and Trustees §378, at 176 (rev. 2d ed. 1977) (stating that trusts for governmental or municipal purposes are charitable), and at 184-85 (stating that a trust "to supplement the existing police or fire departments of a municipality" is an example of a trust created for governmental benefits).) The record reflects that the sole, longstanding purpose of the Corporation has been to provide fire protection services for those persons from whom it solicited funds. We agree with the trial court that the Corporation is a charitable trust and that the assets held by the Corporation in trust may be used only to provide fire protection services for the

citizens of the District.

The Corporation contends that the assets held by the Corporation are "it's [sic] assets," the disposition of which "is to be determined by Corporate officers and not the Court." While this may be true for an individual or a for-profit corporation, it is not true for a not-for-profit corporation holding assets as trustee of a charitable trust.

■ The Corporation also argues that it cannot be a trust without a trust instrument. However, unlike trusts created expressly by intent or will, charitable trusts are remedial and created by statute. Traditional trust documents are not required.

### 2. Is the doctrine of cy pres applicable?

■ The Restatement (Second) of Trusts defines "cy pres" as follows:

> "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor." (Restatement (Second) of Trusts §399, at 297 (1959), quoted in *Graham Hospital Association v. Talley* (1975), 29 Ill. App. 3d 190, 193, 329 N.E.2d 918, 921.)

Similarly, Professor Bogert has defined the limited application of the doctrine as follows:

> "If the failed gift was to or for a charitable institution which never existed, or has ceased to exist, or is too vaguely described to be identified, *** the court will usually either deliver the corpus to another like institution in the same region, to hold outright or in trust, whether a successor, affiliate, parent, or unrelated institution." (G. Bogert, Trusts and Trustees §442, at 599-600 (2d ed. 1964), quoted in *In re Estate of Tomlinson* (1976), 65 Ill. 2d 382, 389-90, 359 N.E.2d 109, 112.)

Therefore, the doctrine of *cy pres* applies when the charitable purpose becomes impossible, impracticable, or illegal, or when the designated trustee never existed, ceased to exist, or is too vaguely described to be identified.

Under the Act, the Attorney General may institute a proceeding to secure proper administration of a charitable trust. The relevant section of that Act states as follows:

> "The Attorney General may institute appropriate proceedings

to secure compliance with this Act and to secure the proper administration of any trust or other relationship to which this Act applies. Nothing in this Act confers on the Attorney General any additional powers to administer, supervise, or direct the administration of charitable trusts." (Ill. Rev. Stat. 1989, ch. 14, par. 62.)

The Act also allows the Attorney General to establish rules and regulations, investigate trustees, and hold hearings pursuant to an investigation. Ill. Rev. Stat. 1989, ch. 14, pars. 55 through 60; see also *People ex rel. Scott v. Silverstein* (1980), 86 Ill. App. 3d 605, 609, 408 N.E.2d 243, 246-47 (directing trial court to hold a hearing on the appointment of a receiver).

■■ When determining whether a genuine issue of material fact exists, the court must find such an issue supported by evidentiary facts revealed in the record. (*Seefeldt*, 154 Ill. App. 3d at 718, 506 N.E.2d at 1055, citing *Harrington v. Chicago Sun-Times* (1986), 150 Ill. App. 3d 797, 801, 502 N.E.2d 332, 334.) "In determining the genuineness of a fact, a court should ignore personal conclusions, opinions, and self-serving statements and consider only facts admissible in evidence under the rules of evidence." *Seefeldt*, 154 Ill. App. 3d at 718, 506 N.E.2d at 1055, citing *Malawy v. Richards Manufacturing Co.* (1986), 150 Ill. App. 3d 549, 571, 501 N.E.2d 376, 390.

In his motion for summary judgment, the Attorney General asserted that because the Corporation changed its corporate purpose, it "no longer intends to use its charitable assets for the provision of emergency fire protection services" and planned to liquidate or convert those assets under its control to non-fire protection purposes. While these assertions were denied by the Corporation in its answer, the Corporation presented no "evidentiary facts" to contradict those presented by the Attorney General. See *Local 165, International Brotherhood of Electrical Workers v. Bradley* (1986), 149 Ill. App. 3d 193, 205, 499 N.E.2d 577, 585.

The Attorney General's motion presented the following facts. First, the purpose of the Corporation was changed on May 18, 1989, and the newly stated purpose does not reflect a specific intent to provide fire protection services. Second, at the June 1989 hearing on defendant's motion for temporary injunction, Pat Rogers, then a volunteer member of the Corporation, testified that he and other members of the Corporation's executive board discussed selling corporate assets, but not necessarily to the highest bidder or to the District. At a hearing on the District's petition for rule to show cause held in July 1989, Patsy Rader, secretary of the Corporation, testified to the Cor-

poration's intent to establish a volunteer fire department museum and library.

■ Testimony received by witnesses under oath and in the record may be considered in support of a motion for summary judgment. (*Elsa Benson, Inc. v. Kalman Floor Co.* (1989), 191 Ill. App. 3d 1016, 1023, 548 N.E.2d 485, 489 (considering testimony from a previous trial); see also *Volling v. Amoco Chemical Corp.* (1987), 159 Ill. App. 3d 424, 428, 512 N.E.2d 124, 126 (holding that testimony by an occurrence witness on the record may be considered for summary judgment).) Accordingly, the above testimony was before the court for its consideration of the Attorney General's motion for summary judgment.

■ As additional support for his motion for summary judgment, the Attorney General included affidavits from several members of the Corporation, an affidavit from a past treasurer of the District, and copies of the District's levying ordinances for the years 1976 through 1989. The affidavits of the Corporation members showed that from 1906 through 1975, the Corporation received its operating revenues from citizen donations, community fundraisers, and donations from Clearlake Township, Sangamon County, and the Villages of Clearlake, Spaulding, and Riverton. All the revenues received by the Corporation were used for operating expenses, and for the purchase of fire-fighting equipment and property on which two firehouses were built. The tax ordinances and the affidavit from the past treasurer of the District established that from 1975 through 1989, the Corporation's operating budget was raised entirely as a result of tax levies collected by the District for fire protection services.

Our review of the record reveals no genuine issue of material fact as to whether the Corporation is able or willing to continue with the purpose for which trust funds were contributed, or whether the corporate changes have made the purpose impossible, impracticable, or illegal. While we agree with the Third District Appellate Court that "cy pres is an extraordinary power not to be used on every occasion where administration of the trust becomes difficult" (*Graham Hospital*, 29 Ill. App. 3d at 193, 329 N.E.2d at 921), the allegations of the Attorney General's motions were not contradicted and were supported by proper evidentiary facts in the record. Therefore, summary judgment was proper.

Affirmed.

LUND and GREEN, JJ., concur.