153 Ill. App.3d 299 (1987)
505 N.E.2d 413
In re ESTATE OF EVELYN M. OFFERMAN, Deceased (Humane Society of Will County, Appellant,
v.
St. Joseph Hospital et al., Appellees).
No. 3-86-0155.
Illinois Appellate Court  Third District.
Opinion filed March 12, 1987.
*300 James C. James III, of Reid, Ochsenschlager, Piccony & Weiler, of Aurora (Lambert M. Ochsenschlager and Wayne F. Weiler, of counsel), for appellant.
Neil F. Hartigan, Attorney General, of Springfield (Matthew D. Shapiro, Floyd D. Perkins, and Christine Hehmeyer Rosso, Assistant Attorneys General, of Chicago, of counsel), for appellees St. Joseph Hospital, Silver Cross Hospital, Will County Chapter Heart Association of Illinois, Multiple Sclerosis Society, Cerebral Palsy United of Will County, and the Salvation Army.
Thomas, Wallace, Feehan, Baron & Kaplan, of Joliet (Richard T. Buck, Christine H. Rosso, and James D. Grumley, of counsel), for appellee Guardian Angel Home.
Douglas McKeown and Richard T. Buck, both of McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, of Joliet, for appellee Estate of Evelyn M. Offerman.
Judgment affirmed.
JUSTICE WOMBACHER delivered the opinion of the court:
Mrs. Evelyn Offerman died testate leaving her last will and testament. The will was admitted to probate in November of 1983. On August *301 13, 1984, the Humane Society of Will County/Joliet (Humane) intervened, as a party interested in the estate. Humane petitioned the trial court for application of the doctrine of equitable deviation with respect to what Humane alleged to be a charitable trust contained in the decedent's will. After a hearing, the trial court granted the executor's motion for summary judgment and denied the relief requested in Humane's petition for equitable deviation. Humane appeals.
The following issues are raised by Humane on appeal: (1) whether this court should make an independent analysis of the facts; (2) whether the trial court erred when it found that the decedent, Mrs. Offerman, did not have a general charitable intent in making the gift under article six of her will and that her will did not create a charitable trust to carry out that intent; (3) whether the doctrine of equitable deviation is applicable in this case; and (4) whether a bequest to the Guardian Angel Home is a bequest for a charitable purpose.
On May 4, 1970, Mrs. Offerman executed her will. Prior to the execution of the will, Mrs. Offerman, at the direction of her attorney, prepared a handwritten letter with an attached memorandum. The letter was described as a competency letter by her attorney and it contained the necessary elements to establish competency to make a will. The letter and memorandum were signed by the testator and the witnesses prior to the execution of the will. The letter and memorandum were admitted into evidence at the hearing on Humane's petition for equitable deviation on January 17, 1985.
Mrs. Offerman died on October 24, 1983. The will was admitted to probate on November 18, 1983. The American Society for the Prevention of Cruelty to Animals (ASPCA) appeared in the probate proceeding as a beneficiary under article six of the will and disclaimed the gift stating, inter alia, that the cost of building and maintaining a shelter facility in Joliet, Illinois, was prohibitive, given the fact that they were located in New York.
The relevant parts of Mrs. Offerman's will involved in this dispute are articles six and seven. In article six of the will, Mrs. Offerman gave the residue of her estate to the American Society For The Prevention of Cruelty To Animals (ASPCA), on the condition that said society guarantee certain criteria be met. She then proceeded to list seven conditions which the ASPCA had to fulfill before they could receive the gift. In article seven, Mrs. Offerman stated that "[i]n the event that the American Society For The Prevention Of Cruelty to Animals shall fail to qualify" to receive the bequest "pursuant to the terms and provisions of Article Six immediately preceding," the residue of her estate was to be divided among seven other charitable organizations, *302 including the Guardian Angel Home of Joliet.
On December 18, 1984, the trial court allowed Humane's petition for intervention. Humane then filed its petition for equitable deviation requesting that it be substituted for the ASPCA in article six of the will. The trial court held a hearing on the petition for equitable deviation on January 17 and 18, 1985. On February 4, 1986, the trial court issued a written decision denying Humane's motion for summary judgment with prejudice and granting the executor's motion for summary judgment.
 1 Humane first argues that this court should make an independent decision on the fats and grant their petition for equitable deviation. In general, a court of review will not disturb a trial court's finding unless the holding of the trial court is against the manifest weight of the evidence. (Greene v. City of Chicago (1978), 73 Ill.2d 100, 382 N.E.2d 1205.) The construction and legal effect of an instrument, however, raises a question of law. When the material facts are not in dispute and the only question is the legal effect of an instrument, the manifest-weight-of-the-evidence standard is not applicable. (Northern Illinois Medical Center v. Home State Bank (1985), 136 Ill. App.3d 129, 482 N.E.2d 1085.) In addition, where the evidence is entirely documentary in nature, a court of review may make an independent decision of the facts. Schlobohm v. Police Board (1984), 122 Ill. App.3d 541, 461 N.E.2d 601.
The record reveals that the evidence adduced at trial included oral testimony in addition to the documentary evidence. However, the trial judge stated in his written decision that there was essentially no dispute concerning the relevant facts of the case. We agree that the material facts of the case are not in dispute; therefore, the manifest weight of the evidence standard is not applicable here, and we will make our own independent analysis of the legal instrument in this case.
 2, 3 The second issue Humane raises on appeal is whether the trial court erred when it found that Mrs. Offerman did not have a general charitable intent in making the gift in article six and that her will did not create a charitable trust to carry out that intent. Humane argues that the will and the letters written by Mrs. Offerman clearly indicate that the primary purpose of Mrs. Offerman's will was to benefit the stray and homeless animals in the Joliet area. Humane contends that the ASPCA is only the mode, not the object of the gift.
When construing a will, it is the duty of the court to determine the intent of the testator and give effect to the intent to the extent possible. (Phelps v. Seeley (1954), 3 Ill.2d 210, 119 N.E.2d 923.) In *303 arriving at such intent, the court should look primarily to the language employed in the will, and if that is plain and unambiguous, the court should not resort to rules of construction. (First National Bank v. Canton Council of Campfire Girls, Inc. (1981), 85 Ill.2d 507, 426 N.E.2d 1198.) The testator's intent must be determined by considering the document as a whole, and the provisions of a will should not be read in isolation. Northern Illinois Medical Center v. Home State Bank (1985), 136 Ill. App.3d 129, 482 N.E.2d 1085.
 4 An examination of Mrs. Offerman's will reveals that when articles six and seven are read together, Mrs. Offerman's intent is clear and unambiguous. Article six provided that the ASPCA was to receive the residue of her estate provided they guarantee that a number of conditions would be fulfilled. Article seven states that in the event the ASPCA fails to "qualify" to receive the bequest "pursuant to the terms and conditions of Article Six," then the residue of her estate was to be divided up among seven other charitable organizations. We find that the "fails to qualify" language clearly encompasses a refusal on the part of ASPCA to accept the gift. Here, the disclaimer by the ASPCA automatically triggered the gift-over provision in the will. Thus, we find that article six of the will provided for a conditional gift to the ASPCA which failed when they filed their disclaimer.
Other portions of the will also support the conclusion that Mrs. Offerman did not have a general charitable intent and did not intend to create a charitable trust. In article five of the will, Mrs. Offerman was very careful in setting up a trust for a part of her primary estate. She used specific trust language and named a specific trustee. In addition, she provided for successor trustees if the original trustee refused to accept the position or resigned after a period of time. Mrs. Offerman could have provided for an alternative organization with similar purposes, such as Humane, to be given an opportunity to accept the gift, but she did not. Instead, she inserted a gift-over provision in the will which indicates that she had the ASPCA specifically in mind and did not have a general charitable intent to benefit the animals, irrespective of the organization involved.
 5 Humane argues that the two letters written by Mrs. Offerman indicate that she had a general charitable intent to benefit animals. The letters, however, were executed before the will, they were not incorporated into the will, and therefore they are not part of the will. Unless a will is ambiguous, extrinsic evidence cannot be used to clarify or explain provisions of a will. Ogle v. Fuiten (1983), 112 Ill. App.3d 1048, 445 N.E.2d 1344.
*304  6 As previously discussed, we find the will to be clear and unambiguous, hence the trial court erred in considering the letters of Mrs. Offerman to determine the intent of Mrs. Offerman. Any error was harmless, however, because the trial court correctly found that the letters only confirmed what was already in the will. Assuming, arguendo, that we were to consider the letters, we would find that the letters simply reflect an attempt to establish the competency of Mrs. Offerman in the event of a future will contest. The letters do not alter in any way the provisions of the will or support a finding of a general charitable intent or a charitable trust.
Humane also contends that a charitable trust was created as a matter of law. Humane claims that the trial judge misapplied the law when it cited section 351 of the Restatement (Second) of Trusts, at 215 (1959), and found a lack of "other evidence" as justifying a lack of intent to create a trust. According to Humane, section 351 and its explanatory comment (e) point out that it is the existence of evidence, not the absence of it, that indicates lack of intention to create a trust.
In order for a charitable trust to be created, the testator must have intended to create one. (Restatement (Second) of Trusts sec. 351, at 215 (1959).) As previously discussed, we find no evidence to support a finding of a general charitable intent by Mrs. Offerman to create a trust. Humane misinterprets the trial court's finding when it argues the trial court found that the lack of "other evidence" supported a finding of a lack of intent to create a trust. The trial court stated that there was lack of evidence to indicate that the testator meant to deal with any other organization than the ASPCA. The trial court did not state that there was a lack of "other evidence" with regard to the issue of Mrs. Offerman's intent to create a charitable trust. In fact, the trial court specifically found that various parts of the will, when read in context, indicated that Mrs. Offerman did not wish to create a charitable trust. We agree with the trial court's finding that Mrs. Offerman never intended to create a trust.
 7 The third issue raised in this appeal is whether the doctrine of equitable deviation should be applied to substitute Humane for the ASPCA. Humane argues equitable deviation should be applied because it was neither known to Mrs. Offerman, nor anticipated by her at the time of the drafting of the will, that the ASPCA would be unwilling or unable to accept her bequest. Humane acknowledges the existence of the alternative-beneficiary provision in the will, but argues that the Illinois Supreme Court was held that a secondary purpose should not prevail where the primary charitable objective of a donor can be obtained by a different method. (Village of Hinsdale v. Chicago *305 City Missionary Society (1940), 375 Ill. 220.) Humane contends that the primary charitable objective of Mrs. Offerman can be obtained by substituting Humane for the ASPCA in article six of the will.
Equitable deviation is a doctrine under the common law whereby courts have the power to order deviations from a trust instrument when compliance with them becomes impossible or illegal or, because of circumstances not known to the testator and not anticipated by him, literal compliance would defeat or impair the purpose of the trust. In order for the doctrine of equitable deviation to apply, the testator must have intended to create a trust. (See Burr v. Brooks (1981), 83 Ill.2d 488, 416 N.E.2d 231; Restatement (Second) of Trusts sec. 381, at 273 (1959).) Equitable deviation can be distinguished from the somewhat similar doctrine of cy pres in that equitable deviation deals only with changes in the administrative provisions of a trust, while cy pres involves an alteration of the purpose to which the res of the trust is to be applied. Northern Illinois Medical Center v. Home State Bank (1985), 136 Ill. App.3d 129, 482 N.E.2d 1085.
 8 Equitable deviation is inapplicable in this case because it is clear from Mrs. Offerman's will that she did not intend to create a charitable trust. Even if she intended to create a charitable trust, the doctrine still would not be applicable because she did anticipate the possibility that the ASPCA would refuse to accept the bequest in article six of her will. The "fails to qualify language" and the gift-over provision in article seven of the will clearly encompass a refusal by the ASPCA to accept the gift on the terms set forth in article six. In addition, equitable deviation is only proper when literal compliance with the terms of the trust is impossible as a result of an unforeseen condition. Even if the ASPCA's refusal to accept is viewed as a unforeseen condition, literal compliance with the terms of the will is not impossible. ASPCA did not refuse the bequest because literal compliance with the conditions in article six was impossible, but because ASPCA decided that it was not practical or cost effective for them to accept the gift.
Humane relies on Village of Hinsdale v. Chicago City Missionary Society (1940), 375 Ill. 220, in arguing that the gift-over provision in article seven should not prevail where the primary charitable objective of the donor can be obtained by a different method. The language in Village of Hinsdale upon which Humane relies is:
"A clearly expressed desire of the donor that his property be devoted to another purpose, unless execution of the charitable use first named is feasible in the manner specified, will be recognized, but a secondary purpose will not prevail where the primary *306 charitable objective of the donor can be obtained by a different method." 375 Ill. 220, 234, 30 N.E.2d 657.)
This very same language was quoted for the same reason to the Illinois Supreme Court in Burr v. Brooks (1981), 83 Ill.2d 488, 416 N.E.2d 231. In Burr the supreme court noted that despite the above quoted language, the court in Village of Hinsdale declined to apply either the doctrine of equitable deviation or cy pres with regard to the funds subject to the alternate disposition in that case. The court in Burr held, therefore, that the Village of Hinsdale case was not controlling because it was not dispositive of the issues presented in Burr v. Brooks.
We find the instant case to be in accord with that of Burr v. Brooks and find likewise that the Village of Hinsdale case is inapplicable to the facts in this case. Substitution of Humane in this case would be more than merely a change in the administration of the gift in article six. Mrs. Offerman specifically named the ASPCA as the beneficiary of the bequest in article six of her will and provided for alternative beneficiaries if that gift should fail. We do not agree that the testator's primary intent was to benefit the animals in Will County irrespective of who was to carry out the plan of Mrs. Offerman. Therefore, we find that equitable deviation is not applicable here.
 9 The final issue Humane raises in this appeal is whether the gift to the Guardian Angel Home is for a charitable purpose. Humane argues that because the bequest to the Guardian Angel Home of Joliet is unconditional, there can be no guarantee that the funds will be used for a charitable purpose.
The Guardian Angel Home of Joliet is a not-for-profit corporation organized for the purpose of the treatment of neglected and emotionally disturbed children. A gift to an incorporated institution, founded and conducted as a charity, is presumed to be for a charitable purpose without it being expressly so stated. (Dickenson v. City of Anna (1923), 310 Ill. 222.) Thus, the bequest to the Guardian Angel Home is for a charitable purpose even though the testator did not specify that it be used for any particular purpose.
For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.
Judgment affirmed.
HEIPLE and SCOTT, JJ., concur.