In re Doris L. MORRIS, Debtor.

Barry M. BARASH, Chapter 7 Trustee for Doris L. Morris, Plaintiff,

v.

Doris L. MORRIS (Deceased), Marilynne L. McCready, Samuel S. McHard, Katz, McAndrews, Balch, Lefstein & Fieweger, P.C., and First of America Trust Company, formerly First National Bank of the Quad Cities, as Trustee of The Morris Irrevocable Living Trust, Defendants.

Bankruptcy No. 89–81750.
Adv. No. 89–8168.

United States Bankruptcy Court,
C.D. Illinois.

Sept. 3, 1992.

R. Philip Steele, Monmouth, Ill., for trustee.

Samuel S. McHard, Rock Island, Ill., for defendants.

Durward J. Long, Sr., Moline, Ill., for Morris.

OPINION

WILLIAM V. ALTENBERGER,
Bankruptcy Judge.

The history of this case starts with the Last Will and Testament of Frances Park McGown, the Debtor's mother. The Will dated February 26, 1971, gave certain farm land to the Debtor for life, and after her death, to the Debtor's three children, with the proviso that if any of the grandchildren were not alive at the time of the Debtor's death, then the deceased grandchild's share would go to his or her children. Paragraph "THIRD" of the Will as originally drafted provided for a spendthrift provision as to

income from "said trust estate" and the principal fund. When executed, the word "trust" was deleted and the word "life" was inserted in its place. As events developed, these provisions of the Will created two problems. First, the Debtor only had a life estate. Second, all the classes of beneficiaries could not be determined until the death of the Debtor.

Frances Park McGown died not long thereafter. Soon after her death, the Debtor, along with her husband and her children and their spouses, in September, 1972, executed a mortgage to The Mutual Benefit Life Insurance Company to secure a $77,000.00 note.[1] Thereafter, at various times in 1981 the Debtor's husband and two sons, along with other borrowers, not related to the Debtor, became indebted to two Oklahoma banks (BANKS). Then in January of 1982, the Debtor, her husband, her two sons, and her daughter, Marilynne L. McCready, signed mortgages giving the BANKS mortgage liens on the farm to secure the aforesaid borrowings.

Shortly thereafter, in September of 1982, the BANKS started a foreclosure. The Debtor and her daughter raised a variety of affirmative defenses and filed a counterclaim against the BANKS. The BANKS had two problems associated with the foreclosure. First, the BANKS were only foreclosing against the Debtor's life estate and the remainder interests of her children and the class of contingent beneficiaries would not close until the Debtor's death. Second, the Debtor and her daughter contended that the spendthrift clause in the Will prevented the Debtor from mortgaging the farm. Numerous other defenses were raised to the foreclosure action.

As part of the foreclosure, the BANKS had a receiver appointed. The receiver leased the farm to third parties, and over the course of the receivership, received $150,960.00 in rent. While the receiver was in possession of the farm and received the income from it, at the suggestion of the BANKS' attorney, and with the agreement of the Debtor and her family members, the income from the farm over several years, while not distributed to her, was reported by her as her income for income tax purposes. Though this was not correct, it was done to reduce taxes and to make more money available to the BANKS, and hopefully at some point, to the Debtor and her family. The amount due for taxes was taken by the receiver from the funds in the receivership account and forwarded to Debtor who in turn paid the taxes. After paying the taxes and other expenses the receivership account contained $120,147.02.

Settlement negotiations began. As a part of those negotiations, the BANKS ultimately offered to pay the Debtor $80,-000.00. Although the BANKS' attorney testified that the offer was made to the Debtor and her family and that the BANKS did not care how the money was distributed, the BANKS' attorney wrote to the Debtor's attorney suggesting that the "$80,000.00 would be paid to Doris Morris." In response, the attorney representing the Debtor and her family suggested that the $80,000.00 would be "placed in a spendthrift trust for Doris Morris, with remainder at her death payable to Marilynne McCready." Along with some other provisions, that was the settlement that was approved by the state court. Paragraph 5 of the Stipulation and Settlement Agreement approved by the state court provided that the BANKS

> shall pay the sum of $80,000.00 into an irrevocable spendthrift trust of usual form with DORIS L. MORRIS as the beneficiary. ... Upon the death of DORIS L. MORRIS, the remaining principal balance and accrued interest shall be paid as a lump sum to MARILYNNE LOUISE McCREADY or per stirpes to her descendants who survive her in the event that she predeceases DORIS L. MORRIS. Once the principal balance of the trust falls below $10,000.00, this trust shall terminate and all funds held by the trustee shall be paid to the persons then entitled to the income therefrom.

---

**1.** The record is silent as to the date of Frances Park McGown's death. The will was dated February 26, 1971. The Debtor mortgaged the property in September, 1972.

The trust was signed in December of 1987 and finally funded on June 17, 1988. The trust agreement, in Paragraph 1 set out the purpose of the trust as follows:

This Trust is being created in good faith pursuant to Stipulation and Order of Court in Mercer County Circuit Court Case No. 82 CH 81 and pursuant to the provisions of Section 2–1403 of the Illinois Code of Civil Procedure (1987). The $80,000.00 fund which forms the corpus of this Trust has proceeded from the First National Bank of Thomas, Oklahoma, and the First National Bank of Custer, Oklahoma, in good faith settlement of the aforesaid lawsuit with the intention that it shall operate as Frances Park McGown intended for her Will to operate (Exhibit 1), that is, with the income of the corpus passing through a spendthrift trust to DORIS MORRIS; however, the sole remainder interest under this Trust shall be vested in MARILYNNE LOUISE McCREADY because she did not materially benefit from the loans and mortgages which ultimately caused the loss of the "McGown farm."

and in Paragraph 4, provided as follows:

4. *Spendthrift.* The interests of all beneficiaries of any trust hereunder shall not in any way be subject to the claims of creditors or others nor to legal process, including claims for alimony, child support, or separate maintenance, and may not be voluntarily alienated or encumbered.

Paragraph 11 tracks the settlement agreement in providing as follows:

11. *Discretionary Termination.* If the value of the trust created hereunder shall be less than $10,000.00, the trustee may, at any time, in its sole and absolute discretion, pay the entire property of the trust, as it shall then be constituted, to the beneficiary or beneficiaries thereof, as their interests then appear, whereupon such trust shall terminate.

The $80,000.00 for the settlement came from the $120,147.00 being held by the state court receiver. The sum of $80,-000.00 was transferred by the receiver to the BANKS along with the balance of the funds. The BANKS then transferred the $80,000.00 back to their attorney who placed the funds in his trust account, and in turn wrote a check to the First National Bank of the Quad Cities (FIRST), as Trustee, for $80,622.65, the $622.65 being interest earned while in the attorney's trust account.

While the above events were occurring, another bank, the Bank of Viola (VIOLA BANK) foreclosed on another farm owned by the Debtor. On April 8, 1987, the state court entered a deficiency judgment against the Debtor for $355,290.22. In June of 1989 the Debtor filed a Chapter 7 proceeding in bankruptcy, and subsequently died exactly one year later in June of 1990.

While the Debtor was still alive, her trustee in bankruptcy (BANKRUPTCY TRUSTEE) brought an adversary action against the Debtor, her daughter, and the FIRST, as trustee of the spendthrift trust, alleging the creation of the spendthrift trust was a fraudulent conveyance. The adversary action was brought pursuant to Section 544 of the Bankruptcy Code, 11 U.S.C. Section 544, and the fraudulent conveyance provision of Section 4, Chapter 59 Illinois Revised Statutes which reads as follows:

Every gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to disturb, delay, hinder or defraud creditors or other persons, and every bond or other evidence of debt given, suit commenced, or judgment entered, with like intent, shall be void as against such creditors, purchasers and other persons.

The Trustee argues that the settlor of a spendthrift trust cannot create such a trust for her own benefit, and contends that is exactly what the Debtor did when she took $80,000.00 of farm income, which she was solely entitled to as the life tenant, and created the spendthrift trust at the FIRST.

The Defendants argue that the BANKS, and not the Debtor, created the spendthrift trust pursuant to Section 2–1403 of Chap-

ter 110 Illinois Revised Statutes which provides in part as follows:

> Judgment debtor as beneficiary of trust. No court, except as otherwise provided in this Section, shall order the satisfaction of a judgment out of any property held in trust for the judgment debtor if such trust has, in good faith, been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor.

In their arguments the Defendants do not dispute that a life estate cannot be the subject of a spendthrift provision or that a settlor cannot create a spendthrift trust for the settlor's benefit. Referring to what they contend are the three documents of evidence, the Will of Frances Park McGown, the Settlement Agreement, and the Trust Agreement, they argue that it was the BANKS, and not the Debtor, who created the trust to accomplish the wishes of Frances Park McGown.

■ While the creation of a spendthrift trust does not always constitute a fraudulent conveyance, a spendthrift provision may itself be invalid. The law does not permit one to create a spendthrift trust with his own property for his own benefit. *In re Sildorff,* 96 B.R. 859 (C.D.Ill.1989); *In re Sundeen,* 62 B.R. 619 (Bkrtcy.C.D.Ill. 1986). Under Section 541(c)(2) of the Bankruptcy Code, only a trust enforceable under state law as a spendthrift trust is excepted and excluded from the assets of a bankruptcy estate. That is why the crucial issue in this case is who created the spendthrift trust, the BANKS or the Debtor. If, as the Trustee contends, the Debtor created the trust, the spendthrift provision is invalid and the Debtor's interest in the trust is a part of the bankruptcy estate. This result would occur as a matter of law and there would be no conveyance to set aside.

Initially the Debtor held a life estate in the farm, which interest was legally subject to the claims of her creditors. Practically her creditors may have faced problems determining and reaching her interest. But legally there were no prohibitions to doing so. During her life she treated her interest as such. In fact, she first mortgaged her interest in the farm in 1972 immediately following her mother's death. Yet, when the litigation with the BANKS was over, $80,000.00 was available to meet her needs in a spendthrift trust shielded from her creditors. Such a manipulation surely constitutes action taken with the intent to "disturb, delay, hinder or defraud" her creditors.

■ Returning to the Debtor's initial acquisition of her interest in the farm, and referring to the first of what the Defendants contend are the key documents, the Will of Frances Park McGown, it is clear that the Debtor was given only a life estate. The Will, as originally drafted, provided for a trust, with a spendthrift provision. Frances Park McGown purposely had the word "trust" stricken and the words "life estate" inserted. As the Defendants apparently now concede, the spendthrift provision in the Will was invalid. A spendthrift provision is not enforceable absent a trust arrangement. Notwithstanding that the spendthrift provision was never enforceable, the Defendants argue that this Court should recognize Frances Park McGown's intent to create a spendthrift trust and somehow conclude that the spendthrift trust resulting from the foreclosure litigation was not created by the Debtor but by Frances Park McGown herself. But this is not a will construction suit nor a dispute among family members as to the proper distribution of the estate. The spendthrift provision of the will, being invalid *ab initio,* could not pass through the foreclosure action intact and wind up in the settlement agreement. For that reason, Frances Park McGown's intent is irrelevant. She does not get a second opportunity to speak from the grave.

During the entire period of ownership the Debtor treated her life estate as subject to the claims of her creditors. She mortgaged it to Mutual Benefit Life Insurance Company and later to the BANKS. Whether she used poor judgment or was a soft touch for some of her children is not relevant. Many people mortgage their property for the debts of others which in

retrospect turns out to be a bad decision. The Debtor has ignored the spendthrift provision when it was to her benefit to do so—when she mortgaged the property—and then sought its protection when she needed it. Such opportunistic flip-flopping will not be accepted by the Court.

■ Chronologically the next major event to occur, and one which the Defendants ask this Court to consider, was the settlement of the state foreclosure action. The Defendants argue that the state court sanctioned the establishment of the spendthrift trust. It is first noted that the state court's order was the result of a settlement and the issues were not litigated. It is safe to assume that the state court placed its stamp of approval on the order because the parties said it was settled. Under Illinois law, settlement agreements are approved if fair and reasonable. *In re Marriage of Burch,* 205 Ill.App.3d 1082, 150 Ill.Dec. 922, 563 N.E.2d 1049 (1st Dist.1990). Once the parties represent to the court that they have reached a good faith settlement, a presumption of validity arises. *Johnson v. Belleville Radiologists, Ltd.,* 221 Ill.App.3d 100, 163 Ill.Dec. 596, 581 N.E.2d 750 (5th Dist.1991). In approving a settlement agreement the court does not rule on the merits of the underlying litigation or test the validity or legality of each and every provision contained in the settlement agreement. That is not the role of the court. The Defendants read too much in the order approving the settlement agreement.

Furthermore when that same court in a different case, the one involving the VIOLA BANK and the Debtor, had the issue before it of whether the spendthrift trust shielded the Debtor's interest, it held it did not. Trustee's Ex. 8A, B & C.

■ Finally, the Defendants rely on the trust documentation. That documentation flows out of the settlement and was executed shortly after the court order approving the settlement. It is obviously drafted to support the position that the trust was validly created. The BANKS wanted the foreclosure completed and title to the farm. They had little concern over the language as long as they properly reached that goal.

The documentation was drafted by the Debtor's attorney and obviously contains self serving language. As noted above, the reference to the state court order is a bootstrap reference to their own settlement, not an independent court determination. The reference to Section 2-1403 of the Illinois Code of Civil Procedure is just that, without any factual basis, as it glosses over the issue of who in fact created the trust. The verbiage of the trust agreement simply does not carry the day. Finally the reference to the intent of Frances Park McGown being that a spendthrift trust should be created is actually contrary to her exhibited intent that a trust not be created.

The Defendants seem to suggest that if the trust was not created by the BANKS it was created by her children for her benefit. This Court disagrees. The Defendants were free to allocate the settlement fund in any manner, within the realm of fairness and reasonableness. The Debtor, having had a life estate in the farm and not being too advanced in years, had a substantial interest going into the foreclosure suit. In the trust established by the settlement, the Debtor had the right to income for life as well as the right to invade principal if necessary for her support. The bottom line is that the Debtor had a substantial interest in the settlement fund and agreed to, if not insisted upon, an arrangement whereby a spendthrift provision was impressed on her interests in the fund. Other courts have held that "spendthrift" trusts arising out of litigation settlements are property of the bankruptcy estate. *In re Jordan,* 914 F.2d 197 (9th Cir.1990); *Walro v. Striegel,* 131 B.R. 697 (S.D.Ind.1991).

At the closing argument the Defendants also asked this Court to apply the doctrine of *cy pres* and find that under the Will of Frances Park McGown a spendthrift trust should be created. The doctrine of *cy pres* applies when a settlor's charitable purpose becomes impossible, impractical or incapable of being carried out. *In re St. Joseph's Hosp.,* 133 B.R. 453 (Bkrtcy.S.D.Ill.1991). In that event, the court will not permit the trust to fail, but will direct the application

of trust property to another charitable purpose which falls within the settlor's general charitable intention. *Id.* The doctrine of *cy pres* simply has no application to the present case because the Will of Frances Park McGown had no charitable design at all.

■ In addition, even where the law permits, the reform which the parties seek here is beyond that which a court may grant. In rare circumstances, the heirs and legatees of a testator may agree among themselves to a distribution of an estate in contravention to that provided for by the testator in his will. *Altemeier v. Harris*, 335 Ill.App. 130, 81 N.E.2d 22 (2d Dist.1948). In order for a court to accept a family settlement agreement, it must find that the provisions of a will are uncertain in legal meaning and that protracted litigation among family members would be likely to result. *Id.* This doctrine was recently applied in *In re St. Joseph's Hosp.*, *supra*, where the court upheld a spendthrift provision in a settlement agreement entered into by family members which was virtually identical to the spendthrift provision contained in the testator's will. In that case, unlike the present, an action seeking construction of the will was filed after its admission to probate and a settlement agreement was entered into resolving the will construction suit. The present case is further distinguishable in that the settlement agreement entered into by the Debtor and her children, save the spendthrift provision, drastically alters the distribution provided for in the McGown Will. There was no construction or reformation sought of Frances Park McGown's will upon her death. Rather, the Debtor disregarded the spendthrift provision for ten years until it became apparent that unless it was somehow revived, she would be left with nothing.

In conclusion, when the Debtor inherited the life estate in the farm from her mother, it was subject to the claims of her creditors and she treated it as such, yet when the foreclosure litigation was over, she received $80,000.00 for her interest in the form of a spendthrift trust, free of the claims of her creditors. She may have been in need, she may have been a soft touch for her relatives, but that does not justify creating a relationship not intended by Frances Park McGown and which improved her position vis-a-vis her creditors. This Court finds that the Debtor's interests in the spendthrift trust are property of her bankruptcy estate.

The Defendants argue that even if the Court finds that the spendthrift trust was self-settled that the Trustee can only reach the income from the trust and not the remainder interest. The Defendants are incorrect. Under similar facts, the court rejected such a position in *In re Robbins*, 826 F.2d 293 (4th Cir.1987), stating:

> [T]he settlors here explicitly retained a substantial interest in the corpus of the trust. The trustee was authorized to invade the corpus for the support and care of the settlors. The trustee's discretion was unfettered, but surely the trustee would recognize that his discretion should be exercised in favor of invasion of the corpus when the needs of the settlors warranted it. At least, to the extent of their needs, the corpus of the trust was available for the maintenance, care and enjoyment of the settlors.

> The general rule is stated in Restatement (Second) of Trusts section 156(2) (1957). The creditors of a settlor may reach the assets of a spendthrift trust to the maximum extent that the trustee might apply them for the use and benefit of the settlors. Under the terms of this trust, the trustee was authorized to apply the entire corpus for the support and maintenance of the settlors, and thus the entire corpus is subject to the claim of their creditors.

The well-worn cliche which the court applied in *Robbins* is equally applicable to this case:

> One may wish to have one's cake and eat it, too, but the law need not bring the wish to fruition.

The entire funds in the spendthrift trust are property of the bankruptcy estate and the First of America Trust Company, as Trustee, is directed to turnover the funds

to Barry M. Barash, Chapter 7 Trustee for Doris L. Morris.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.