In re Doris L. MORRIS, Debtor.

Barry M. BARASH, Chapter 7 Trustee for Doris L. Morris, Plaintiff,

v.

Doris L. MORRIS (Deceased), Marilynne L. McCready, Samuel S. McHard, Katz, McAndrews, Balch, Lefstein & Fieweger, P.C., and First of America Trust Company, formerly First National Bank of the Quad Cities, as Trustee of The Morris Irrevocable Living Trust, Defendants.

Marilynne L. McCREADY, and First of America Trust Company, formerly First National Bank of the Quad Cities, as Trustee of the Morris Irrevocable Living Trust, Appellants,

v.

Barry M. BARASH, Chapter 7 Trustee for Doris L. Morris, Appellee.

No. 92–4086.

United States District Court, C.D. Illinois.

Feb. 18, 1993.

Samuel S. McHard, Dale G. Haake, Katz, McAndrews, Balch, Lefstein & Fieweger PC, Rock Island, IL, for appellants.

Barry M. Barash, Barash Stoerzbach & Henson, Galesburg, IL, for appellee.

## ORDER

McDADE, District Judge.

This matter is before the Court on appeal from a ruling by United States Bankruptcy Judge William v. Altenberger. The Court has jurisdiction over this appeal pursuant to Bankruptcy Rule 8001(a).

The standard of review of a bankruptcy court ruling is governed by Bankruptcy Court Rule 8013, which states:

> On [an] appeal the district court or bankruptcy appellate panel may affirm, modify or reverse a bankruptcy court's judgment, order of decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness.

11 U.S.C. Rule 8013. The Seventh Circuit in *Matter of Boomgarden*, 780 F.2d 657 (7th Cir.1985), states: "[W]e must accept the bankruptcy court's findings of fact unless they are clearly erroneous.... We can, however, apply *de novo* review to conclusions of law of any lower court." *Id.* at 660 (citations omitted).

## BACKGROUND

To properly understand the issues involved in this case, it is necessary to go back to February 26, 1971, when Frances Park McGown executed her last will and testament. Mrs. McGown bequeathed a life estate in her 383 acre farm, located in Mercer County, Illinois, to her only child, Doris Morris, the Debtor. Upon the Debtor's death, the will provided that the estate would go to Mrs. McGown's three grand-

children: Douglas Edmund Morris; Richard Stephen Morris; and Marilynne Louise Morris. These three individuals are also the Debtor's children. The will also contained a "spendthrift" clause, which reads as follows:

I direct that neither the income from said life estate nor the principal fund be liable for the debts, present or future, of any beneficiary, his heirs, devisees and legatees, and shall not be subject to the right on the part of any creditor to seize or reach the same under any writ or any proceeding at law or equity. And no beneficiary shall have any power to give, grant, sell, convey, mortgage, pledge or incumber, or anticipate the income, or any installment thereof, or any shares in the principal thereof, except the residuary beneficiaries may dispose of their interests by Will in case of death.

(Trustee's Ex. # 1).

The first line of the above clause originally referred to a "trust" estate, but the word "trust" was crossed out and the word "life" inserted. The change was initialed by Mrs. McGown. (*Id.*)

In the fall of 1971, Mrs. McGown died and her daughter, the Debtor, received a life estate in the McGown Farm. Despite the limitations placed on the life estate in the will, Debtor and her children executed a mortgage on the farm to secure a $77,000.00 note from The Mutual Benefit Life Insurance Company. This occurred in September of 1972. *In re Morris*, 144 B.R. 401, 402 (Bankr.C.D.Ill.1992).

Several years later, in 1981, debtor's husband Edmund and her son Steve became indebted in the amount of nearly $530,000.00 to two Oklahoma banks, the Bank of Custer and the Bank of Thomas. The indebtedness arose from an ill-fated oil scheme and other bad loans for which Steve Morris, Debtor's son, was held responsible. As a result of the financial difficulty in which Debtor's son and husband found themselves, Debtor, her husband, her two sons, Douglas and Steve, and her daughter, Marilynne L. McCready, an Appellant in this action, signed mortgages in January of 1982 giving the Oklahoma

Banks mortgage liens on the farm to secure the aforesaid borrowing. *Id.* Again, the mortgage was on Debtor's life estate, despite the will provision to the contrary. In this appeal, the Court's primary concern is with the mortgages to the Oklahoma Banks and issues arising therefrom.

Within a few months, in September of 1982, the Oklahoma Banks filed a complaint to foreclose the mortgages. The Debtor and her daughter, Marilynne McCready raised a variety of defenses to the action, the most notable being that the spendthrift clause in the will prevented the Debtor from mortgaging the farm. *Id.*

In February of 1983, pursuant to a receivership provision in the mortgages, the Oklahoma Banks had a receiver appointed to:

[T]ake possession of the [farm] during the pendency of this litigation with full power and authority to operate, manage and conserve the property, to secure tenants therefor and lease the same, to collect rents, issues of profits thereof ... to pay taxes which have been levied against the property."

(Vol. VIII, Def. Ex. # 6).

The receiver followed these directives from 1983 to 1987 (Appellants' brief p. 10), and leased the farm to third parties. Over the course of the years, the receiver received $150,960.00 in rent. *In re Morris*, 144 B.R. at 402. After paying taxes and other expenses, the receivership account contained $120,147.02. *Id.*

Eventually, the parties settled the matter, with the Oklahoma Banks agreeing to pay the Debtor $80,000.00. (BR. Ex. # 23). The Oklahoma Banks' attorney stated in a letter to Debtor's attorney that the "$80,000.00 would be paid to Doris Morris, [the Debtor]." (*Id.*) Debtor's attorney responded to the letter by stating that "the $80,000.00 was to be placed in a spendthrift trust for Doris Morris [the Debtor] with the remainder at her death payable to Marilynne McCready...." (BR. Ex. # 22). Subsequently, the state court approved the following settlement agreement:

[The Oklahoma Banks] shall pay the sum of $80,000.00 into an irrevocable

spendthrift trust of usual form with Doris L. Morris [the Debtor] as the beneficiary.... Upon the death of Doris L. Morris, the remaining principal balance and accrued interest shall be paid as a lump sum to Marilynne McCready or per stirpes to her descendants who survive her in the event she predeceases Doris L. Morris. Once the principal falls below $10,000.00, this trust shall terminate and all funds held by the trustee shall be paid to the persons then entitled to the income therefrom.

144 B.R. at 402.

The money to fund the trust came from the receivership which, when closed, had a final balance of $121,538.73. (BR. Ex. # 51). An attorney for the Oklahoma Banks then sent two checks to the Oklahoma Banks, one for $80,000.00 and one for $41,538.73. (BR. Ex. # 14). The check for $80,000.00 was specified as the "money that will eventually be distributed to the Doris Morris Trust." (*Id.*) On June 15, 1988, the attorney for the Oklahoma Banks drew a trust account check payable to the First National Bank of the Quad Cities as Trustee of the Morris Irrevocable Trust. (BR. Ex. # 55). That Bank is now known as the First of America Trust Company, an Appellant in this action. The check was in the amount of $80,622.65, and reflected the interest the money had earned while in a separate account with the Oklahoma Banks. (BR. Ex. # 12). The evidence shows that the money to fund the Morris Irrevocable Trust originated from the receivership account which drew its funds from the rents of the McGown farm. The money was then transferred to the Oklahoma Banks where it was kept in a separate account before being sent to First National Bank of The Quad Cities where it was deposited in the Morris Irrevocable Trust.

The trust, now funded, had the following purpose:

This Trust is being created in good faith pursuant to Stipulation and Order of court in Mercer County Circuit court Case No. 82 CH 81 and pursuant to the provisions of § 2–1403 of the Illinois Code of Civil Procedure (1987). The $80,000.00 fund which forms the corpus of this Trust has proceeded from the First National Bank of Thomas, Oklahoma, and the First National Bank of Custer, Oklahoma, in good faith settlement of the aforesaid lawsuit with the intention that it shall operate as Frances Park McGown intended for her will to operate ... that is, with the income of the corpus passing through a spendthrift trust to Doris Morris; however, the sole remainder interest under this Trust shall be vested from the loans and mortgages which ultimately caused the loss of the "McGown Farm."

.    .    .    .    .

The interest of all beneficiaries of any trust shall not in any way be subject to the claims of creditors or others nor to legal process, including claims for alimony, child support, or separate maintenance, and may not be voluntarily alienated or encumbered.

.    .    .    .    .

If the value of the trust created hereunder shall be less than $10.000.00, the trustee may, at any time, in its sole and absolute discretion, pay the entire property of the trust, as it shall then be constituted, to the beneficiary or beneficiaries thereof, as their interests then appear, whereupon such trust shall terminate.

(Vol. VII Def. # 10). Jack Dickey, President of the Oklahoma Banks signed the document as settlor of the trust. (*Id.*)

Thus, the Morris Irrevocable Trust was funded in June of 1988. Meanwhile, in 1987, the Bank of Viola, now Farmers State Bank of Western Illinois, had obtained a deficiency judgment against Debtor, Doris Morris, in the amount of $355,290.22. This resulted from a mortgage foreclosure on a second farm, the Morris Farm which was Debtor's husband's family farm. That deficiency judgment precipitated a bankruptcy petition which Debtor filed in June of 1989. 144 B.R. at 403.

Debtor died one year after she filed the bankruptcy petition. Prior to her death, however, her trustee in bankruptcy

brought an adversary action against Debtor, her daughter Marilynne McCready, and the First National Bank of the Quad Cities. The Bankruptcy Trustee alleged that the Debtor was the settlor of a spendthrift trust which was created for her own benefit. The Bankruptcy Trustee alleged that this occurred when the Debtor took $80,000.00 of farm income, which she was entitled to through her life estate in the farm, and created the spendthrift trust, of which she was a beneficiary, at the First National Bank of the Quad Cities. 144 B.R. at 404. *See, In re Silldorff,* 96 B.R. 859 (C.D. Ill.1989) (The law does not permit a person to create a spendthrift trust with her own property for her own benefit.). The bankruptcy court ruled in favor of the bankruptcy trustee, and found that the entire funds in the spendthrift trust were property of the bankruptcy estate and ordered the First of America Trust Company, formerly the First National Bank of the Quad Cities, to turn over the funds to the bankruptcy trustee. It is from this order that the Appellants, Marilynne McCready and The First of America Trust Company appeal.

### ANALYSIS

As framed by the parties and the bankruptcy court, "the crucial issue in this case is who created the spendthrift trust, the [Oklahoma] Banks or the Debtor." 144 B.R. at 404.

■ Initially, the bankruptcy court found that Debtor was in violation of Ill. Rev.Stat. ch. 59, para. 4, which states:

> Every gift, grant conveyance, assignment or transfer of, or charge upon any estate, real or personal, or right or thing in action, or rent or profit thereof, made with intent to disturb, delay, hinder or defraud creditors or other persons, and every bond or other evidence of debt given, suit commenced, or judgment entered, with like intent, shall be void as against creditors, purchasers and other persons.

*Id.*

In applying the facts to the above statute, the bankruptcy court stated that Debtor had always treated her life estate as one which could be subject to the claims of creditors. The bankruptcy court noted that Debtor mortgaged her life estate soon after her mother's death to the Mutual Benefit Life Insurance Company, and later to the Oklahoma Banks. The bankruptcy court then noted that "when the litigation with the [Oklahoma] Banks was over, $80,000.00 was available to meet [Debtor's] needs in a spendthrift trust shielded from her creditors. Such a manipulation surely constitutes action taken with the intent to 'disturb, delay, hinder or defraud' [Debtor's] creditors." 144 B.R. at 404. This alone would be sufficient to void the trust according to the statute. However, the bankruptcy court went on to find that the spendthrift provision of the will was invalid *ab initio. Id.*

■ By so ruling, the bankruptcy court found that spendthrift provisions were not enforceable without a trust arrangement. To create a valid spendthrift trust, "the will must manifest an intention to do so, although no particular form of words is required. The interest of the beneficiary cannot exceed an equitable estate in the income of the property, the legal title must be vested in a trustee and the trust must be an active one." 96 C.J.S. *Wills* § 1007. A review of Frances McGown's will shows that she did not vest title to the McGown Farm in a trustee, nor did she "manifest an intention to do so." Consequently, a spendthrift trust was not created by the "spendthrift clause" of Frances McGown's will. See *Henderson v. Harness,* 176 Ill. 302, 310, 52 N.E. 68, 70 (1898) (Except by the intervention of trustees, an estate cannot be devised for the benefit of the legatee in such a manner that it cannot be seized for the debts of one having a life estate therein.).

Appellants argue that it is incorrect to state that a spendthrift provision is not enforceable absent a trust agreement and refer the Court to a case in which a limitation over alienation of a legal life estate was held valid. *See Brumsey v. Brumsey,* 351 Ill. 414, 184 N.E. 627 (1933). However, neither this Court nor the bankruptcy court has found that restrictions placed on a life

estate are invalid. Rather, the bankruptcy court and this Court have simply found that Frances McGown's will did not create a spendthrift trust.

Appellants argue that the Court must determine the intent of the will to determine if a valid spendthrift trust was created. Upon review, the Court finds that Frances McGown intended to create a life estate in the McGown farm in favor of Debtor with certain restrictions on alienation. The Court notes that Frances McGown specifically deleted the word "trust" from the "spendthrift clause" and inserted the word "life" instead. Appellants argue that the attorney who drafted the will testified that Mrs. McGown intended to have a spendthrift trust in the will. The Court notes, however, that the attorney specifically testified that "[t]he document we prepared in this particular case included a spendthrift clause, not a spendthrift trust...." (Appellant's Brief p. 21). Furthermore, the bankruptcy court had ample opportunity to consider the testimony of the attorney who drafted the will, and there is no showing by Appellants that any credibility determinations made by the bankruptcy court regarding the attorney were clearly erroneous.

Even if this Court were to find that a valid spendthrift trust was a part of Frances McGown's will, which it specifically does not, the Court notes that Debtor and her three children essentially agreed to vitiate the terms of the will when they twice agreed to mortgage the property. As previously noted, Debtor and her children mortgaged the property to the Mutual Benefit Life Insurance Company shortly after Frances McGown's death, and Debtor and her children subsequently agreed to mortgage the property to the Oklahoma Banks. The bankruptcy court aptly described this pattern of mortgaging property subject to a supposed "spendthrift clause" by stating:

> During the entire period of ownership, the Debtor treated her life estate as subject to the claims of her creditors.... Many people mortgage their property for the debts of others which in retrospect turns out to be a bad decision. The Debtor has ignored the spendthrift provi-

sion when it was to her benefit to do so— when she mortgaged the property—and then she sought its protection when she needed it. Such opportunistic flip-flopping will not be accepted by the Court. 144 B.R. at 405.

■ Appellants also argue that because the state court sanctioned the settlement agreement, which included the spendthrift trust, the trust must be legitimate. In addressing this issue, the bankruptcy court stated: "[i]t is safe to assume that the state court placed its stamp of approval on the order because the parties said it was settled. Under Illinois law, settlement agreements are approved if fair and reasonable." 144 B.R. at 405 citing, *In re Marriage of Burch*, 205 Ill.App.3d 1082, 150 Ill.Dec. 922, 563 N.E.2d 1049 (1990). On appeal, Appellants argue that the state court judge went through each recitation of the settlement agreement point by point and that his approval of the agreement was no mere formality. However, there has been no evidence presented that the state court judge was asked to determine the meaning of Frances McGown's will, construe the effect of repeated mortgages on the property, determine who in fact was the settlor of the spendthrift trust in the settlement, or test the "legality of each and every provision contained in the settlement agreement." 144 B.R. at 405. Rather, the evidence shows that the state court judge simply read the settlement agreement and approved it. *See Johnson v. Belleville Radiologists, Ltd.*, 221 Ill.App.3d 100, 163 Ill. Dec. 596, 581 N.E.2d 750 (1991) (Once the parties represent to the court that they have reached a good faith settlement, a presumption of validity exists.). This court further notes, as did the bankruptcy court, that the same state court had the opportunity to determine whether the spendthrift trust shielded the Debtor's interest when it considered the case involving the Bank of Viola. The state court determined that no such protection was available. 144 B.R. at 405.

■ Having worked through the preceding arguments, the Court finally arrives at

what was termed the crucial question: Who created the spendthrift trust, the Oklahoma banks or the Debtor? The bankruptcy court found that the spendthrift provision in the settlement agreement was drafted to support the position that the trust was validly created. The bankruptcy court further found that the documentation was drafted by the Debtor's attorney and contains self-serving language. These findings are findings of fact, and the Appellants, by simply arguing to the contrary, have not shown that those findings were clearly erroneous. As the bankruptcy court noted, "[t]he bottom line is that the Debtor had a substantial interest in the settlement fund and agreed to, if not insisted upon, an arrangement whereby a spendthrift provision was impressed upon her interests in the fund." 144 B.R. at 405. Furthermore, the bankruptcy court heard from a number of witnesses on the issue of whether the trust was self-settled. Due regard must be given to the bankruptcy court to judge the credibility of the witnesses, and the appellants have not shown that the bankruptcy court's determinations regarding the credibility of the witnesses, in relation to the creation of the trust, were clearly erroneous.

■ Appellants also argue that the Court must apply the doctrine of *cy pres* to carry out the intention of Frances McGown as nearly as possible if it is impossible to give the intentions of her will legal effect. The bankruptcy court disposed of this argument by stating that the *cy pres* doctrine is only applicable in cases where a charitable purpose becomes impossible to carry out. On appeal, the Appellants argue that the *cy pres* doctrine must not be limited to situations involving charitable purposes, but must be applied to all situations in which it is impossible to carry out the intent of the will. However, the bankruptcy court's conclusion of law on this issue was correct. A long line of cases have held that under Illinois law, the equitable doctrine of *cy pres* applies when the settlor's *charitable purposes* become impossible to fulfill. *In re St. Joseph's Hospital*, 133 B.R. 453 (Bankr.S.D.Ill.1991); *Riverton Area Fire Protection District v. Riverton Volunteer Fire Department*, 208 Ill. App.3d 944, 153 Ill.Dec. 165, 566 N.E.2d 1015 (1991); *Matter of Village of Mt. Prospect*, 167 Ill.App.3d 1031, 118 Ill.Dec. 667, 522 N.E.2d 122 (1988); *Matter of Estate of Offerman*, 153 Ill.App.3d 299, 106 Ill.Dec. 107, 505 N.E.2d 413 (1987); *Burr v. Brooks*, 83 Ill.2d 488, 48 Ill.Dec. 200, 416 N.E.2d 231 (1981); *Graham Hospital Ass'n v. Talley*, 29 Ill.App.3d 190, 329 N.E.2d 918 (1975). Accordingly, there being no charitable intent in the will, the doctrine of *cy pres* is inapplicable to the case at bar.

■ Appellants also argue that the spendthrift trust which arose from the settlement agreement had the effect of a family settlement agreement which was designed to give full effect to the intent of the will. The Court has previously found, however, that it was not the intent of the will to create a spendthrift trust. Furthermore, even if that was the intent, the spendthrift trust which arose from the settlement agreement "drastically altered the distribution provided for in the McGown will." 144 B.R. at 406. Furthermore, as noted by the bankruptcy court, the beneficiaries of the will never sought to reform the will and in fact disregarded the terms of the will until it became apparent that the beneficiaries, by their mishandling of the property, would be left with nothing. *Id.*

For all of the above stated reasons, the Court finds that the spendthrift provision in the settlement agreement was self-settled, and therefore, invalid. *In re Silldorff*, 96 B.R. 859 (C.D.Ill.1989).

■ Appellants also argue that even if the Court finds that the trust was self-settled, the trustee can only reach the income from the trust and not the remainder interest. Appellants argue that a trustee cannot compel turnover of funds when the debtor has no present right to the funds. Because Debtor died after she filed for bankruptcy, Appellants assert that she did not have a present right to the funds. *See Matter of Lyons*, 957 F.2d 444 (7th Cir. 1992). Appellants argument, however, ignores the principle that if a settlor creates

a spendthrift trust for her own benefit, it is void as to existing or future creditors, and they can reach her interests under the trust. *Matter of Witlin,* 640 F.2d 661, 663 (5th Cir.1981). Additionally, in the trust in the case at bar, the trustee had discretion to pay Debtor such amounts from the principal as necessary to maintain Debtor's standard of living. Because the trustee was entitled to apply the entire corpus for the support of Debtor, the entire corpus was subject to the claims of creditors. *In re Robbins,* 826 F.2d 293 (4th Cir.1987); Restatement (Second) of Trusts § 156(2). *See Farmers State Bank v. Janish,* 410 N.W.2d 188 (S.D.1987) (Where a settlor is the beneficiary of the spendthrift trust, the spendthrift provision is ineffective against creditors who may reach the trust funds.). Thus, not only may Debtor's interest in the trust be reached, but also the interest of Appellant Marilynne McCready.

■ Finally, Appellants argue that as a matter of law the bankruptcy court erred in ordering the turnover of the entire funds in the spendthrift trust because income taxes, trustee's fees and trustee's attorneys' fees must be paid from the trust. These issues were not raised before the bankruptcy court and are not reflected in the record on appeal. Accordingly, they are not reviewable by this Court. *Matter of Kroner,* 953 F.2d 317 (7th Cir.1992).

## CONCLUSION

For the above stated reasons the decision of the bankruptcy court is AFFIRMED.